AUSTIN AGNEW ET AL., COMPLAINANTS-APPELLANTS, v. AMERICAN ICE COMPANY ET AL., DEFENDANTS-RESPONDENTS.

Argued April 25, 1949—Decided May 23, 1949.

292

Mr. Vincent P. Biunno (Mr. Ralph E. Lum, on the brief; Messrs. Lum, Fairlie & Fosler, attorneys) argued the cause for the appellants.

Mr. Donald B. Kipp (Messrs. Pitney, Hardin & Ward, attorneys) argued the cause for the respondent American Ice Company.

Mr. Bernard M. Shanley (Mr. Harold H. Fisher, on the brief; Messrs. Young, Shanley, Foehl & Fisher, attorneys)

argued the cause for the respondent Continental Illinois National Bank and Trust Company of Chicago, as executor and trustee of the estate of Thomas M. Howell, deceased.

The opinion of the court was delivered by

HEHER, J. This is a class bill to restrain the payment of dividends on the common stock of the respondent American Ice Company until "an accumulated dividend preference" on its outstanding non-cumulative preferred stock shall have been paid.

The complainant Agnew is the owner of 400 shares of the preferred stock, all acquired on January 27, 1937; and his co-complainant Woodward owns 300 shares of the same class, of which 50 shares were acquired on February 6, 1929, and 250 shares on May 20, 1940. The respondent Continental Illinois National Bank and Trust Company of Chicago, as executor and trustee of the estate of Thomas M. Howell, deceased, the holder of 114,300 shares of the common stock of the corporation, was on its own motion admitted as a party defendant, and thereafter made answer.

The decree directed the corporation to pay a dividend of $2 on each share of the preferred stock before the payment of any further dividend on the common stock. By an appeal and cross-appeals, the whole of the decree is made subject to review.

The articles of incorporation provided for the payment "out of the surplus or net earnings of each fiscal year, * * * as and when declared by the Board of Directors," of a non-cumulative dividend upon the company's outstanding preferred stock "at the rate of but never exceeding six per cent. per annum, payable yearly, half-yearly or quarterly, before any dividend shall be set apart or paid on the common stock for such year," and the distribution, in the discretion of the directorate, of "the remainder of the surplus or net earnings of each fiscal year * * * as dividends among the holders of the common stock, as and when the Board of Directors shall determine." There was also provision that, on liquidation or dissolution, the holders of the preferred stock shall

receive payment at par "before any amount shall be payable to the holders of the common stock," and thereafter $25 shall be payable upon each share of the outstanding common stock, and the balance of the "assets and funds shall be distributed ratably among all of the shareholders without preference, in such manner that there shall be paid upon each share of common stock one-fourth of the amount paid upon each share of the preferred stock outstanding."

Annual dividends at the established rate of $6 per share were paid on the preferred stock from the year 1917, when the issue was authorized, to and including the year 1934. For ten years thereafter, there were reduced dividends; in some years, none at all. At times, the annual earnings exceeded the dividends paid on the preferred stock; and in other years, the reverse was true. In 1945, payment of the full dividend on the preferred stock was resumed; and on September 24, 1946, a dividend of 50c on each share of the common stock was declared, payable "out of the surplus or net earnings of the Company." It is this dividend that is under attack. The contention of the appellant preferred stockholders is that dividends are not payable on the common stock until the shortage in the preferred dividends for the years 1935 to 1944 shall have been paid.

The learned Vice-Chancellor found (a) that the dividend priority of the preferred stock is confined to the earnings and net additions to surplus in a given year; (b) that the accumulated preferences are reducible by the amount of "overpayments" of dividends on the particular stock in prior years; (c) that profits realized and credited to surplus instead of earnings are allocable to the preferred stock, while losses deducted from surplus are chargeable to the common stock, and where the entries are made in the one year a balance shall be struck; and (d) that where a net operating loss is coupled with a net addition to surplus in a given year, one shall not be offset against the other, nor shall there be such offset in a year in which there were net profits coupled with a net deduction from surplus.

## I.

It is the insistence of complainants that there were in fact no prior "overpayments" of dividends on the preferred stock, but that, even though there were, such overpayments cannot be offset against "underpayments" of subsequent years, *i. e.*, dividends "earned but withheld."

The specific point is that the decree in this respect reduces the dividends on complainants' preferred stock by exacting a credit for the overpayments made to prior owners of the stock, and "penalizes" them for the excess payments so made to their predecessors in title by imposing a lien upon the shares in favor of the company without notice of the lien in the certificates of stock as required by the Uniform Stock Transfer Law. *R. S.* 14:8–41. The question is *res nova* in this State; and, so far as we are aware, it has not been considered in any of the states which have adopted the Uniform Stock Transfer Act.

What was done here did not constitute the enforcement of a "lien" within the intendment of the cited statute. The prior right to the payment of accrued dividend deficiencies on non-cumulative preferred stock from earnings not currently devoted to the purpose is but an incident of ownership of the stock; and, barring laches or estoppel, it is on the same principle subject to a set-off for dividend overpayments, for otherwise the one class would benefit at the expense of the other. There cannot be arbitrary discrimination between the two classes of stockholders. There was no absolute right to a dividend on the preferred stock; it was rather a right of priority over the holders of the common stock. Except as to the stipulated preference, preferred and common stockholders are on substantially the same footing. Stockholders are not entitled to a distribution of earnings or surplus in the form of a dividend until there has been appropriate action by the directorate. Earnings remain corporate property until a dividend is declared. Unless controlled by statute, the exercise of the power to declare dividends rests in sound discretion. Judicial interference with

the judgment of the corporate management is not justifiable unless there has been an abuse of discretion. *Park v. Grant Locomotive Works*, 40 *N. J. Eq.* 114 (*Ch.* 1885); *Blanchard v. The Prudential Ins. Co. of America*, 80 *N. J. Eq.* 209 (*E. & A.* 1912); *Leviton v. North Jersey Holding Co.*, 106 *N. J. Eq.* 517 (*Ch.* 1930).

Here, dividends were made payable on the preferred stock as and when declared by the directors. The directors conceived from time to time that prudent management demanded that dividends on the preferred stock be omitted entirely or paid at less than the stipulated rate, although the current earnings exceeded the amount so distributed; and it would plainly be against conscience to make good these deficiencies in later years from the earnings thus retained without taking into account the overpayments made at the expense of the fund available for dividends on the common stock. Compare *Bassett v. U. S. Cast Iron Pipe & Foundry Co.*, 75 *N. J. Eq.* 539 (*E. & A.* 1909). The right to the application of the retained earnings to the satisfaction of the deferred dividends is conditioned upon the giving of credit for the overpayments made at the expense of the holders of the common stock. It is this equity in favor of the common stockholders that the company seeks to enforce. These are reciprocal rights and duties which are incidents of ownership and pass with the transfer of the stock. The accommodation of the rights of the two classes of stockholders does not constitute the enforcement of a "lien" upon the shares.

The provision of the Uniform Stock Transfer Act cited *supra* (*R. S.* 14:8–41) has reference to a "lien" upon the shares "in favor of a corporation" and a "restriction" upon the transfer of the shares. The balancing of dividend deficiencies and overpayments is in no sense the enforcement of a lien in favor of the company. There is no common-law lien, for a lien under the common law "signifies such hold or claim upon a thing for the satisfaction of a debt, duty or demand, as that it cannot be taken away until the same is satisfied and paid." *Stansbury v. Patent Cloth Mfg. Co.*, 5 *N. J. L.* 433 (*Sup. Ct.* 1819). The essence of a lien at

common law is the right to retain possession of personal property until a charge thereon for a debt or duty is satisfied; and, ordinarily, the lien is lost by the lienholder's voluntary and unconditional surrender of possession or control of the property. *Lanterman v. Luby,* 96 *N. J. L.* 255 (*E. & A.* 1921). There may be a lien disassociated from possession created by statute, by the corporate charter or by-laws, or by contract. Compare *Lask v. Bedell, Inc.,* 91 *N. J. Eq.* 341 (*E. & A.* 1919). But that is not the case here. The dividend-making power of the corporate directors is not within the reach of this section of the Uniform Stock Transfer Act. Neither the term "lien" nor "restriction" has such significance. This statute regulates the transfer of title to the certificates and shares, by the conventional act of the parties and by legal process. The Commissioners' Note says that the provision "is in pursuance of the general policy of this act to make certificates of stock so far as possible the sole representatives of the shares which they represent." 6 *Uniform Laws Annotated, p.* 20. The power of the directors, in the declaration of a deficiency dividend, to nullify the undue advantage achieved by the preferred stockholders through the overpayments is not to be categorized as a "lien" on the shares unenforceable as against a transferee without notice.

In the absence of an estoppel, it does not matter that there was no action to enjoin the overpayments when the dividends were declared. The equity enforceable here arises from the making of the overpayments. But one of the prime elements of estoppel is wanting. The transferee suffered no change of position for the worse on the faith of conduct or a representation, express or implied, that there was no outstanding equity arising from overpayments of dividends. It was incumbent upon the transferees of the shares to make timely inquiry, if they would protect themselves against an equity of this class. And, in the circumstances, the enforcement of the equity is not precluded by laches. Mere lapse of time is not enough. The delay must be un-

reasonable in the circumstances and prejudicial. *Massie v. Asbestos Brake Co.,* 95 *N. J. Eq.* 298 (*E. & A.* 1923).

As said, it is fundamental that, in the declaration of dividends, arbitrary discrimination between classes of stockholders is inadmissible; and the same is true as to members of the same class. No matter what the rule, individual shareholders will suffer some inequity; but it is generally the preferable policy to sustain the equity of set-off for over-payments rather than to deny it, for the transferee may by inquiry safeguard himself against the former, while the latter course would unjustly enrich the preferred stockholders at the expense of the holders of the common stock. Certainly, the merit and force of this rule is compelling until the legislative authority makes explicit provision *contra.*

## II.

Complainants urge that the preference of the preferred stockholders, "in any year, is measured by the amount the Company could pay out in dividends, using funds from the net profits or from the Company's surplus." It is said that "surplus funds, made up of earnings of prior years, after payment of preferred dividends, 'belong' to the common stockholders as against the preferred;" and that, applying "general principles," the learned Vice-Chancellor "labored under the misapprehension that non-cumulative preferred stock, as a matter of law, has certain fixed rights, and no others, and that it has no right to dividends out of surplus funds, from whatever source derived." The word "surplus" in the provision for dividends embodied in the articles of incorporation is given its broad general sense.

The company is in accord with the conclusion of the Vice-Chancellor that the preferred stock bears dividends out of annual earnings up to 6%, and also out of earned surplus in so far as it comprises "dividends withheld out of annual net earnings;" but it challenges the holding that the annual net accretions to surplus, not a part of annual net earnings, were also a source of dividends for the preferred stock. The

Vice-Chancellor found a total underpayment of $2 per share by reckoning as a part of earned surplus these annual net charges to the surplus account which were not a part of the annual net earnings. Disregarding these annual net charges to surplus as a preferred dividend source, there would be an overpayment of $1.40 per share.

As we have seen, the articles of incorporation provide for the payment of a "non-cumulative" dividend at the prescribed rate "out of the surplus or net earnings of each fiscal year." The directors were empowered, in their discretion, to distribute the "remainder of the surplus or net earnings of each fiscal year" as dividends among the holders of the common stock, "as and when the board shall determine." Ordinarily, the adjective "non-cumulative" serves to restrict the dividend source to earnings of the particular year. It signifies that unless there are earnings in a given year, there is no right to a dividend for that year, either then or later. *Basselt v. U. S. Cast Iron Pipe & Foundry Co., supra; Moran v. U. S. Cast Iron Pipe & Foundry Co.*, 95 *N. J. Eq.* 389 (*Ch.* 1924); affirmed, 96 *N. J. Eq.* 698 (*E. & A.* 1924); *Day v. U. S. Cast Iron Pipe & Foundry Co.*, 95 *N. J. Eq.* 389 (*Ch.* 1924); affirmed by an equally divided court, 96 *N. J. Eq.* 736 (*E. & A.* 1924); *Cintas v. American Car & Foundry Co.*, 131 *N. J. Eq.* 419 (*Ch.* 1942); affirmed, 132 *N. J. Eq.* 460 (*E. & A.* 1942). See, also, 23 *Columbia Law Review, p.* 357. The nature of the shares of corporate capital stock is contractual, subject to such disabling provisions as may be imposed by statute. Ordinarily, it "represents a preference only in case there shall be profits to divide;" and, even then, the declaration of a dividend is not mandatory, but is subject to the sound discretion of the directorate in the exercise of the managerial power, and, in the absence of a contrary stipulation, such dividends, if not payable for want of profits in the particular year, are not chargeable to the profits of a succeeding year and payable thereout to the prejudice of the common stockholders. *Collins v. Portland Electric Power Co.*, 12 *Fed.* 2d 671; *Staples v. Eastman Photographic Materials Co.*, 65 *L. J. Ch.* 682.

■■ But here there is provision for earned dividend cumulation. Dividends earned but withheld and retained as surplus, and not utilized in the corporate business, are required to be paid on the preferred stock before there can be a dividend distribution on the common stock. The corporation may not pay dividends on the preferred stock from a reserve fund accumulated from earnings which would otherwise be payable as dividends to the holders of the common stock; but "where the reserve fund is accumulated, in whole or in part, by the cutting down of dividends which would otherwise have been paid to preferred stockholders, the fund, so far as it represents moneys so retained, is available for the payment of subsequent dividends upon the preferred stock." *Bassett v. U. S. Cast Iron Pipe & Foundry Co., supra.* This is the principle of the provision of the articles of incorporation cited *supra*. Annual net earnings may not be withheld from the preferred stockholders and devoted in later years to the payment of dividends on the common stock. The preferred stockholders are entitled to the payment out of the surplus of moneys earned but unpaid upon their stock before payments of dividends on the common stock. The interpretation advanced by complainants would render the stock essentially cumulative rather than non-cumulative. It ignores the express provision for non-cumulative stock and the qualifying phrase "of each fiscal year;" and it overlooks, too, the provision that the "remainder of the surplus or net earnings of each fiscal year" may, in the discretion of the directorate, be distributed as dividends among the holders of the common stock. The term "surplus" takes its meaning from the associated terms and provisions; it cannot be lifted out of context and given a meaning at variance with the plain design of the provision for non-cumulative preferred stock. The provision for the distribution, on dissolution, of the company's "assets and funds" has no bearing upon the dividend rights of the two classes of stockholders.

The company's books of account fairly reflect the earnings constituting the preferred dividend source.

The decree is reversed; and the cause is remanded for further proceedings in conformity with this opinion.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, BURLING and ACKERSON—5.

*For affirmance*—None.