**GUTTMANN v. ILLINOIS CEN-
TRAL R. CO.**

No. 238, Docket 21801.

United States Court of Appeals
Second Circuit.

Argued May 1, 1951.

Decided May 31, 1951.

The facts are set forth in the opinion of the district judge, D.C., 91 F.Supp. 285. The following there appears: The defendant's net income each year, from 1937 to 1947, inclusive, exceeded the annual dividend on the non-cumulative preferred stock, but no such dividends for those years were ever declared. Similarly, in each of the years 1948, 1949 and 1950, the net income exceeded the annual dividend on the preferred, but the directors declared a dividend on the preferred for each such year. In 1950, the directors also declared a dividend of $1.50 per share on the common stock.

In his formal findings, the trial judge, after finding many basic facts, found as follows: "The decision of the directors of the defendant not to declare and pay dividends in any of the years 1937 to 1947, inclusive, was made in the exercise of sound business discretion and judgment by the directors, and in the interests of all the creditors, including the bondholders, and of all the preferred and common stockholders of the defendant, and of the public."

Plaintiff contends (1) that the directors abused their discretion in not declaring dividends on the preferred in the years 1942 to 1947, inclusive; (2) that, even if that is not true, the directors had power to declare those dividends subsequently, and abused their discretion when, without doing so, in 1950 they declared a dividend on the common stock.

Paul, Weiss, Rifkind, Wharton & Garrison and Nemerov & Schapiro, all of New York City (Lloyd K. Garrison, New York City, of counsel), Mortimer A. Shapiro, Norman S. Nemser, William T. Coleman,

928

Jr., and Donald Schapiro, all of New York City, for plaintiff-appellant.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City (Theodore Kiendl, New York City, of counsel), John W. Davis, S. Hazard Gillespie, Jr., Francis W. Phillips and Peter M. Ward, all of New York City, for defendant-appellee.

Before L. HAND, CHASE and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The trial court's findings of facts—which are amply supported by the evidence and unquestionably are not "clearly erroneous" —establish that the directors acted well within their discretion in withholding declarations of dividends on the non-cumulative preferred stock up to the year 1948. In so holding, we assume, *arguendo,* that, as plaintiff insists,[1] the standard of discretion in weighing the propriety of the non-declaration of dividends on such preferred stock is far stricter than in the case of non-declaration of dividends on common stock. For, on the facts as found and on the evidence, we think the directors, in not declaring dividends on the preferred in the years 1937–1947, adopted a reasonable attitude of reluctant but contingent pessimism about the future, an attitude proper, in the circumstances, for persons charged, on behalf of all interests, with the management of this enterprise.[2]

The issue, then, is whether the directors could validly declare a dividend on the common stock in 1950 without directing that there should be paid (in addition to preferred dividends on the preferred for that year) alleged arrears of preferred dividends, the amount of which had been earned in 1942–1947 but remained undeclared and unpaid. To put it differently, we must decide whether (a) the directors had the power to declare such alleged arrears of dividends on the preferred and (b) whether they "abused" their discretion in declaring any dividend on the common without ordering the payment of those alleged arrears.

■ Our lode-star is Wabash Railway Co. v. Barclay, 280 U.S. 197, 50 S.Ct. 106, 74 L.Ed. 368, which dealt with the non-cumulative preferred stock of an Indiana railroad corporation. There were no controlling Indiana decisions or statutes on that subject.[3] The United States Supreme Court was therefore obliged to interpret the contract according to its own notions of what the contract meant. We have a similar problem here, since there are no Illinois decisions or statutory provisions which control or guide us. Absent such decisions and statutes, we must take the Wabash opinion as expressing the correct interpretation of the rights of non-cumulative

1. Plaintiff cites Cratty v. Peoria Law Library Ass'n, 219 Ill. 516, 76 N.E. 707. It related to a claim under the by-laws of a library association providing (a) that the association "guaranties" an 8% dividend each year on all shares, "due and payable" on January 1, and which was to be a "charge against the association," and (b) that "production" of the certificate by a holder "shall entitle" the holder to the dividend. In Tennant v. Epstein, 356 Ill. 26, 189 N.E. 864, 870, 98 A.L.R. 1515, the court interpreted the Cratty case as merely stating the usual rule as to the use and "abuse" of discretion in withholding payment of common dividends. See also Hofeller v. General Candy Corp., 275 Ill.App. 89.

2. That the directors were not acting in the interest of the common stockholders in disregard of the interest of the preferred appears from the following: The Union Pacific Railroad holds about 25% of the outstanding common stock (i.e., 348,700 shares out of a total of 1,357,994) and was therefore pretty obviously in control of the Board of Directors. Yet, that same Railroad holds about 52% of the outstanding preferred shares (i.e., 98,270 out of a total of 186,457). Union Pacific would plainly be better off if the plaintiff were successful in this suit.

The interest of the public was involved in the reduction of funded debt. For railroads with excessive fixed charges, in periods of stress tend to skimp maintenance and not to improve service.

3. The case of Starr Publishing Co. v. Ball, 192 Ind. 158, 134 N.E. 285, assuming it might otherwise have been pertinent, was of no help since it had to do with an industrial corporation as to which there was an Indiana statute inapplicable to the Wabash railroad company.

preferred stockholders of this Illinois company. For the difference between the language of the preferred stock here and that in Wabash seems to us to be of no moment.[4]

In the Wabash case, plaintiffs, holders of non-cumulative preferred stock, sought an injunction preventing the defendant railroad company from paying dividends on the common stock[5] unless it first paid dividends on the non-cumulative preferred to the extent that the company, in previous years, had had net earnings available for that payment and that such dividends remained unpaid. The Court decided against the plaintiffs. It spoke of the fact that, in earlier years, "net earnings that could have been used for the payment were expended upon improvements and additions to the property and equipment of the road"; it held that the contract with the preferred meant that "if those profits are justifiably applied by the directors to capital improvements and no dividend is declared within the year, the claim for that year is gone and cannot be asserted at a later date." We take that as a ruling that the directors were left with no discretion ever to pay any such dividend. For if they had had that discretion, it would surely have been an "abuse" to pay dividends on the common while disregarding the asserted claim of the non-cumulative preferred to back dividends. Indeed, the plaintiff in the instant case contends that a payment of common dividends, whenever there is such a discretion, constitutes an unlawful "diversion"; and such a "diversion" would be an "abuse" of discretion.[6]

Plaintiff, however, seeks to limit the effect of the Wabash ruling to instances where the net earnings, for a given year, which could have been paid to the non-cumulative preferred, have once been expended justifiably for "capital improvements" or "additions to the property or equipment." He would have us treat the words "non-cumulative" as if they read "cumulative if earned except only when the earnings are paid out for capital additions." He argues that the Wabash ruling has no application when net earnings for a given year are legitimately retained for any one of a variety of other corporate purposes, and when in a subsequent year it develops that such retention was not necessary. We think the attempted distinction untenable. It ascribes to the Supreme Court a naive over-estimation of the importance of tangibles (because they can be touched and seen) as contrasted with intangibles. Suppose the directors of a corporation justifiably invested the retained earnings for the year 1945 in land which, at the time, seemed essential or highly desirable for the company's future welfare. Suppose that, in 1948, it turned out that the land so purchased was not necessary or useful, and that the directors thereupon caused it to be sold. Plaintiff's position compels the implied concession that the proceeds of such a sale would never be available for payment of so-called arrears of unpaid non-cumulative preferred dividends, and that the directors would forever lack all discretion to pay them.[7] We fail to see any intelligible difference between (1) such a situation[8] and (2) one where annual earnings are properly retained for any appropriate corporate purpose, and where in a later year the retention proves wholly unnecessary.[9] There is no sensible ground

4. Cf. Joslin v. Boston & M. R. Co., 274 Mass. 551, 175 N.E. 156, 159.

5. And on a class of preferred stock having rights junior to those of the preferred stock held by the plaintiffs.

6 This becomes the more evident when it is noted that the plaintiff asserts that "non-cumulative" means in effect, "cumulative if earned." For directors have no discretion to pay common dividends without paying arrears of cumulative preferred dividends.

7. Were plaintiff to contend that the proceeds of such a sale are available for preferred dividends he would logically be required to contend that reserves for depreciation of capital assets are similarly available. For such reserves constitute, in effect, a repayment of investment in capital.

8. Or one where, in our suppositious case, the corporation, no longer needing the land, could easily sell it at a handsome figure.

9. The attempted distinction would also come to this: (a) The noncumulative pre-

for singling out legitimate capital outlays, once made, as the sole cause of the irrevocable destruction of the claims of the preferred. We do not believe that the Supreme Court gave the contract with the preferred such an irrational interpretation. It simply happened that in the Wabash case the earnings had been used for capital additions, and that, accordingly, the court happened to mention that particular purpose. Consequently, we think that the Court, in referring to that fact, did not intend it to have any significance. We disregard the decisions of the New Jersey courts,[10] and the decision of the Ninth Circuit,[11] since we think they are at odds with the rationale of the Wabash decision.[12]

Here we are interpreting a contract into which uncoerced men entered. Nothing in the wording of that contract would suggest to an ordinary wayfaring person the existence of a contingent or inchoate right to arrears of dividends.[13] The notion that such a right was promised is, rather, the invention of lawyers or other experts, a notion stemming from considerations of fairness, from a policy of protecting investors in those securities. But the preferred stockholders are not—like sailors or idiots or infants—wards of the judiciary. As courts on occasions have quoted or paraphrased ancient poets, it may not be inappropriate to paraphrase a modern poet, and to say that "a contract is a contract is a contract." To be sure, it is an overstatement that the courts never do more than carry out the intentions of the parties: In the interest of fairness and justice, many a judge-made legal rule does impose, on one of the parties to a contract, obligations which neither party actually contemplated and as to which the language of the contract is silent.[14] But there are limits to the extent to which a court may go in so interpolating rights and obligations which were never in the parties' contemplation. In this case we consider those limits clear.

ferred irrevocably loses all rights to a dividend as of a given year, if the earnings for that year are invested in fixed capital, but (b) has an inchoate right in the form of a sort of contingent credit if those earnings are reasonably retained for future investments which are never made and which thereafter show up as wholly unnecessary. This is to say that the preferred take the risk of loss of a dividend as of a year in which it is earned when there is a reasonable need for a present capital investment, but no such risk if there is a present reasonable likelihood of a need for such an investment in the future, which later appears undesirable. We see no rational basis for such a distinction.

10. Bassett v. United States Cast Iron Pipe & Foundry Co., 74 N.J.Eq. 668, 70 A. 929, affirmed 75 N.J.Eq. 539, 73 A. 514; Day v. United States Cast Iron Pipe & Foundry Co., 95 N.J.Eq. 389, 123 A. 546, affirmed 96 N.J.Eq. 736, 126 A. 302; Moran v. United States Cast Iron Pipe & Foundry Co., 95 N.J.Eq. 389, 123 A. 546, affirmed 96 N.J.Eq. 698, 126 A. 329; Cintas v. American Car & Foundry Co., 131 N.J.Eq. 419, 25 A.2d 418, affirmed 132 N.J.Eq. 460, 28 A.2d 531; Agnew v. American Ice Co., 2 N.J. 291, 66 A.2d 330, 10 A.L.R.2d 232; Dohme v. Pacific Coast Co., 5 N.J.Super. 477, 68 A.2d 490.

Lich v. United States Rubber Co., D.C., 39 F.Supp. 675, affirmed 3 Cir., 123 F.2d 145 and Diamond v. Davis, Sup., 38 N. Y.S.2d 103, affirmed 265 App.Div. 919, 39 N.Y.S.2d 412, affirmed 292 N.Y. 554, 54 N.E.2d 683, dealt with non-cumulative preferred stocks of New Jersey corporations.

11. Collins v. Portland Electric Power Co., 9 Cir., 12 F.2d 671, 48 A.L.R. 73. This case was cited to the Court in the Wabash case.

12. In Joslin v. Boston & M. R. Co., 274 Mass. 551, 175 N.E. 156, 159, the court stated that it had adopted the Wabash ruling but left open the question whether the directors had discretion to pay arrears of dividends on the non-cumulative preferred stock.

13. Berle, a most brilliant legal commentator on corporate finance, who may be credited with the authorship of plaintiff's basic contention, admitted that "popular interpretation," including that of "investors and businessmen," holds "noncumulative" to mean "that dividends on non-cumulative preferred stock, once passed or omitted, are 'dead'; can never be made up." See Berle, Non-Cumulative Preferred Stock, 23 Columbia Law Review (1923) 358, 364–365.

14. See Kulukundis Shipping Co. v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978, 990–991 and note 43; U. S. v. Forness, 2 Cir., 125 F.2d 928, 936 note 25; Parev Prod-

In sum, we hold that, since the directors did not "abuse" their discretion in withholding dividends on the non-cumulative preferred for any past years, (a) no right survived to have those dividends declared, and (b) the directors had no discretion whatever to declare those dividends subsequently.

From the point of view of the preferred stockholders, the bargain they made may well be of a most undesirable kind. Perhaps the making of such bargains should be prevented. But, if so, the way to prevent them is by legislation, or by prophylactic administrative action authorized by legislation, as in the case of the S. E. C. in respect of securities, including preferred stocks, whether cumulative or non-cumulative, issued by public utility holding companies or their subsidiaries.[15] The courts are not empowered to practice such preventive legal medicine, and must not try to revise, extensively, contracts already outstanding and freely made by adults who are not incompetents.

Affirmed.

ucts Co. v. I. Rokeach & Sons, 2 Cir., 124 F.2d 147, 149; Beidler & Bookmyer v. Universal Ins. Co., 2 Cir., 134 F.2d 828, 830–831; Martin v. Campanaro, 2 Cir., 156 F.2d 127, 130 note 5.

15. See In the Matter of The North American Company, 4 S.E.C. (1939) 434, 462 (dissenting opinion).

There it is pointed out, *inter alia*, that the provisions of many cumulative preferred stocks create bargains that are most undesirable, but which the courts nevertheless enforce.

There are those who think that no sort of preferred stock should be permitted because, among other things, of the unavoidable perplexities which they frequently occasion for conscientious directors owing allegiance to classes of stockholders with interests often in conflict.