51 N.J. Super. 343 (1958)
144 A.2d 4
LEEDS AND LIPPINCOTT COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF,
v.
ETHEL R. NEVIUS, ADAM S. BORST, RANDAL HOLDEN, MIRIAM E. MELLIN, AND THE REMAINING PREFERRED AND COMMON STOCK-HOLDERS OF LEEDS AND LIPPINCOTT COMPANY AS A CLASS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided July 11, 1958.
*345 Messrs. Moore, Butler & McGee (Mr. James N. Butler appearing), attorneys for plaintiff.
Messrs. Perskie & Perskie (Mr. David M. Perskie appearing), attorneys for defendant Helen L. Parrish.
Messrs. Archer, Greiner, Hunter & Read, attorneys for defendant Ethel R. Nevius.
Messrs. Hetfield & Hetfield, attorneys for defendants Adam S. Borst, Randal Holden and Miriam E. Mellin.
Mr. James A. DuPlessis, Jr., attorney for defendant Ida Boffey Bacon.
Mr. Alfred C. Clapp, counsel with all defendants except Helen L. Parrish.
*346 DRENK, J.C.C. (temporarily assigned).
This is a class action brought by Leeds and Lippincott Company, a New Jersey corporation, against certain named defendants and the remaining preferred and common stockholders of plaintiff corporation. A verified complaint was filed with the court on March 27, 1957. On the same day an order was entered providing that a copy of the complaint, accompanied by a letter of explanation from plaintiff's attorneys, be mailed to each of plaintiff's stockholders. The accompanying letter was to advise each stockholder of his right to file an answer in the action without first seeking the permission of the court.
On September 13, 1957, an order was entered granting plaintiff's application for permission to file an amended complaint. Plaintiff was ordered to mail copies of the amended complaint, accompanied by a letter of explanation from its attorneys, to each stockholder and to each attorney who had filed an answer in the cause.
Answers to the amended complaint were filed by Ethel R. Nevius, Adam S. Borst, Randal Holden, Miriam E. Mellin, Ida Boffey Bacon, Thomas P. Knapp, William L. Knapp and Helen Lippincott Parrish. Thomas P. Knapp and William L. Knapp appeared pro se. All others were represented by counsel. All of the answering defendants, excepting Helen Lippincott Parrish, filed answers and counterclaims in their capacity as preferred stockholders of plaintiff. All except Helen Lippincott Parrish disputed the position taken by plaintiff in its amended complaint. Defendant Parrish filed an answer and counterclaim as a common stockholder in which she agreed with and approved of the position taken by the plaintiff in its amended complaint.
The jurisdiction of the court is invoked under the Uniform Declaratory Judgments Act, N.J.S.A. 2A:16-50 et seq. All answering parties have conceded that the action is properly brought and all have joined in asking that the court adjudicate the issues raised by the pleadings.
The broad issue which the court is asked to determine is the respective rights of the preferred and common stockholders *347 of the plaintiff in relation to each other and to the corporation. The particular issues raised are: (1) can the company redeem the preferred stock at $50 per share; (2) in the event of a recapitalization, reorganization, dissolution or winding up of the corporation, are the preferred stockholders entitled to more than $50 per share; and (3) do the preferred stockholders have a presently vested interest in the surplus of the plaintiff?
In December of 1936 plaintiff filed a petition in the United States District Court for the District of New Jersey for permission to reorganize under the provisions of section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 501 et seq. As a result of this action, an amended plan of reorganization was approved in that court on January 4, 1938. One of the provisions of the reorganization approved by that court was the amendment of article IV of plaintiff's certificate of incorporation. The pertinent part of the amended certificate follows:
"The holders of the preferred stock shall be entitled to receive, when and as declared, from the surplus or net profits of the corporation yearly dividends at the rate of Two Dollars and fifty cents ($2.50) per share per year, and no more, payable at such time or times as the Board of Directors shall determine, provided that the dividends payable for any year may be declared and paid within the first three months of the succeeding year, as a dividend for the preceding year, if such dividends so declared and paid are designated as being for the preceding year, and provided further, that notwithstanding the amount of net profits for any year, no dividends shall be paid on the preferred stock, until the Net Earnings of the corporation, as herein particularly defined, for any year for which the dividend is to be paid shall exceed the sum of Seven hundred thousand ($700,000.00) Dollars, and then only to the extent of any such excess. * * *
The dividends on the preferred stock shall be non-cumulative; provided, however, that no dividends shall be paid for any year on common stock in excess of the net profits for that year remaining after payment of Two Dollars and Fifty cents ($2.50) per share for each year on the preferred stock, until dividends earned, but unpaid for any prior year or years on the preferred stock, shall have been paid, but in no other respects shall dividends on preferred stock be cumulative.
No dividends shall be paid on common stock in any year, or for any year, until the full dividend of Two Dollars and Fifty Cents *348 ($2.50) per share for such year has been paid on the preferred stock, and for prior years as set forth in the preceding paragraph [i.e., if dividends are to be paid on the common stock in excess of the net profits]. When all dividends as aforesaid [i.e., cumulative dividends on the preferred stock when dividends on common are to be paid in excess of net profits] have been declared and shall have become payable on the preferred stock, the Board of Directors may declare dividends on the common stock, out of Net Earnings in excess of Seven Hundred Thousand ($700,000.00) Dollars, payable then or thereafter, with limitations as aforesaid [i.e., after payment of preferred stock dividends that have been declared and paid for that year and for prior years where they are cumulative because of dividends in excess of net profits being paid on the common stock].
In the event of the recapitalization, reorganization, dissolution, or winding up (whether voluntary or involuntary) of the affairs of the Corporation, the holders of the preferred stock shall be entitled to be paid or preferred to the extent of Fifty ($50.00) Dollars per share, before any amount shall be paid or distribution made to the holders of the common stock; and after the payment, distribution or preference to the holders of preferred stock to the extent of Fifty ($50.00) Dollars per share, the remaining assets and funds of the Corporation shall be divided and paid to the holders of common stock according to their respective shares. * * *
At any time after its issue, the preferred stock, or any part thereof, or any share or shares thereof, may, by a vote of a majority of the Board of Directors, be redeemed by paying to the holders thereof, the sum of Fifty ($50.00) Dollars per share. If less than all the shares then issued and outstanding is to be redeemed, the shares so to be redeemed shall be selected by lot, or by purchase and payment of shares pro rata as the Board of Directors may determine. * * *" (Italics and explanation in brackets added)
It is the contention of both plaintiff and defendant Parrish, that the correct interpretation of the amended certificate of incorporation would result in the following findings:
(a) The preferred stock is non-cumulative in every respect as to the corporation itself. Cumulative features, if any, apply only as between the preferred and common stock. The result is that the plaintiff should not segregate on its books the amount of preferred dividends earned in excess of $700,000 in each year but not paid.
(b) After dividends of $2.50 have been paid to the preferred stockholders in any year, the excess of current earnings for that year may be paid to the common stockholders, but the common stockholders cannot be paid any dividends *349 which involve the expenditure of moneys other than current earnings for that year. In other words, dividends cannot be paid to common stockholders out of anything but current earnings for that year until earned (in excess of $700,000), but unpaid dividends have been paid on the preferred. To state it another way, common stockholders cannot receive dividends out of surplus, earned in previous years, until dividends earned in excess of $700,000 have been paid to preferred stockholders.
(c) That the company may in accordance with the amended certificate redeem the preferred stock at any time at $50 per share and no more.
(d) Upon the recapitalization, reorganization, dissolution or winding up of the affairs of the plaintiff the preferred stockholders are entitled to be paid $50 per share and no more, and the balance of its assets would be distributed to common stockholders.
(e) The preferred stock has no vested interest or claim in the company's surplus.
The defendants, Nevius, Borst, Holden, Mellin and Bacon, contend that the declaratory judgment entered herein should provide:
(1) When all dividends earned on the preferred stock for the current and prior years have been declared and shall have become payable, then, and only then, the board of directors may declare dividends on the common stock.
(2) In the event of the recapitalization, reorganization, dissolution, or winding up (whether voluntary or involuntary) of the affairs of the corporation, the holders of the preferred stock shall be entitled to be paid or preferred to the extent of $50 per share plus such dividends earned thereon as have not been paid; and such payment or preference shall be made before any amount shall be paid, or distribution made, to the holders of the common stock.
(3) The preferred stock may be redeemed, as provided in the certificate of incorporation, but only on the payment to the holders thereof of the sum of $50 per share together with such dividends earned thereon as have not been paid.
*350 (4) Whatever part of any dividend on the preferred stock has been earned in any year, although it may have been used in the corporate business, shall be segregated on the corporate books for the benefit of the preferred stock and may not be distributed as dividends to the common stock.
The primary issue raised is whether the dividend credit rule is applicable to the preferred stock of the plaintiff. The plaintiff and defendant Parrish maintain that it is not; the other answering defendants maintain that it is. The latter rely heavily upon the case of Sanders v. Cuba Railroad Co., 21 N.J. 78 (1956). The former rely upon the present statute, N.J.S.A. 14:8-2, and the cases both before and after its adoption, and assert that those cases which support dividend credit rule are distinguishable from the present matter.
A study of the authorities cited in the briefs and the argument of counsel has been edifying. Counsel for all parties seem to agree that much of the opinion in Sanders v. Cuba Railroad Co., supra, is dicta. Counsel for the defendants who oppose plaintiff's position allege:
"That the Supreme Court deliberately went out of its way to set down at great length and in a thoroughly considered fashion its own views on the rule so as to clear up any doubts that might arise on the matter. Obviously this was meant for the guidance of future courts, and obviously lower courts are bound by the dicta."
To this I would add that it appears to be also for the guidance of those negotiating and preparing corporate charters thereafter.
It is beyond dispute that in the Sanders case the Supreme Court held (21 N.J., at pages 83-84):
"The rights of the holders of the non-cumulative preferred stock rest generally (apart from statutory restrictions) upon the terms of the defendant's certificate of incorporation. See Ballantine, Corporations, 516, 517 (1946). Those terms conferred priority rights over common stockholders when there were annual net profits from which dividends could properly be declared. Agnew v. American Ice Co., 2 N.J. 291, 298 (1949). If there were no such profits in a *351 given year, then no dividends could be paid to the preferred stockholders with respect to that year, then or thereafter. If, however, there were such profits the board of directors still had broad discretionary powers to withhold any declaration of dividends and retain the profits as part of the corporation's working capital. If during a later year the corporation earned net profits and its board of directors wished to declare dividends to both the non-cumulative preferred stockholders and the common stockholders, the question would then be presented as to whether the preferred stockholders were entitled to receive the earlier dividends (which were passed though they could have been paid from the annual net profits) before the common stockholders received any dividends. This question finds neither a clear nor a specific answer in the defendant's certificate of incorporation, and its determination, in an appropriate case, will involve full consideration of the precise language of the certificate and the present scope and effect of New Jersey's so-called `Cast Iron Pipe Doctrine' or dividend credit rule." (Italics supplied)
And later it was stated (21 N.J., at pp. 85-86):
"This much is quite apparent  if the common stockholders, who generally control the corporation and will benefit most by the passing of the dividends on the preferred stock, may freely achieve that result without any dividend credit consequences, then the preferred stockholders will be substantially at the mercy of others who will be under temptation to act in their own self-interest. See Note, Dividend Rights of Non-Cumulative Preferred Stock, 61 Yale L.J. 245, 251 (1952); Note, Right of Non-Cumulative Preferred Stockholders to Back Dividends Earned But Unpaid, 74 U. Pa. L. Rev. 605, 608 (1926). While such conclusion may sometimes be compelled by the clear contractual arrangements between the parties there is no just reason why our courts should not avoid it whenever the contract is silent or is so general as to leave adequate room for its construction. In any event, New Jersey's doctrine has received wide approval in legal writings and there does not seem to be any present disposition in this court to reject it or limit its sweep in favor of the Supreme Court's approach in the Wabash Railway case [Wabash R. Co. v. Barclay, 280 U.S. 197, 50 S.Ct. 106, 74 L.Ed. 368]" (Italics supplied)
The Sanders case is authority for the propositions that (1) the rights of the holders of the non-cumulative preferred stock rest generally upon the terms of the certificate of incorporation, and (2) where the certificate of incorporation is silent or is so general as to leave adequate room for the construction of the contractual arrangements *352 between the parties, the dividend credit rule will (in a proper case) be applied.
Two elementary rules relating to written contracts guide me in these conclusions. They are well stated in First National Bank, Fort Lee v. Burdett, 121 N.J. Eq. 277, 280-281 (E. & A. 1937):
"There is no difficulty in ascertaining from the instrument itself the intention of the parties thereto, `and, where the contract is perfectly clear and unambiguous in its language and provisions (as is the case here), no resort is necessary nor will be made to any of the rules of construction, unless some latent ambiguity be proved.' Briggs v. United Shoe Machinery Corp., 92 N.J. Eq. 277.
The rule is firmly established that the parties are bound by the agreement which they have made. `The law will not make a better contract for parties than they themselves have seen fit to enter into, or alter it for the benefit of one party and to the detriment of the other. The judicial function of a court of law is to enforce a contract as it is written.' Kupfersmith v. Delaware Insurance Co., 84 N.J. Law 271."
My examination of the disputed provisions of article IV of plaintiff's charter compels me to conclude that (1) its language is clear and unambiguous, (2) no resort could properly be made to the rules of construction, and (3) it should be enforced as written.

I.
The first question to be determined from a reading of article IV is to what extent if any the preferred stock is cumulative.
The charter provides that "the dividends on the preferred stock shall be non-cumulative." Then follows an exception which provides that in the event dividends are to be paid on the common stock "in excess of the net profits for that year" then earned dividends on the preferred stock shall be cumulative for prior years. It then provides, "but in no other respects shall dividends on preferred stock be cumulative."
The clear meaning of the provision is to make the preferred stock non-cumulative unless and until dividends are *353 declared on the common stock, which dividends will exceed the net profit earned during the year in which such a dividend is declared. I do not understand how the scrivener could have stated it more clearly. Not only is there the direct statement that the preferred stock is to be non-cumulative but even after the exception the limitation is again stated.
At this point it is to be noted that the charter takes into consideration an application of the earned dividend rule. In the provisions in regard to the limitations on declaring dividends on the common stock in excess of the net profits is included a provision for the payment of dividends earned but unpaid for any prior year or years on the preferred stock. Immediately following is the limitation that in no other respects shall the dividends on preferred stock be cumulative; i.e., preferred dividends are cumulative only if dividends are to be paid on the common stock in excess of net profits.
I find, therefore, under the contractual arrangement between the parties, as is clearly reflected in the certificate of incorporation, that the preferred stock is non-cumulative unless and until dividends for any year are declared on the common stock in excess of the net earnings for that year.
Article IV also provides for the payment of dividends on the common stock, in any year, when the net profits exceed $700,000, and a full dividend for that year of $2.50 has been paid per share on the preferred stock. Again the scrivener has set forth a limitation. In the event that dividends are to be declared on the common stock in excess of net profits for the year, then the preferred stock is entitled to receive cumulative earned dividends for prior years. The charter limits the declaration of dividends on common stock out of current net profits only by providing for the payment of a current dividend of $2.50 per share on the preferred stock; provided, further, that there are current net profits in excess of $700,000 from which both common and preferred stock dividends may be paid. I therefore find that the board of directors in any year may declare and pay dividends on the common stock from net earnings in that year exceeding $700,000, provided there shall first be paid a dividend of *354 $2.50 per share on the preferred stock from such net earnings in excess of $700,000. This latter finding is made on my understanding that not only have there been no dividends declared at any time on the common stock in excess of net profits for the year declared, but in fact no dividends at all have ever been declared on either class of stock.

II.
What are the rights of the preferred stockholders in the event of recapitalization, reorganization, dissolution or winding up, whether voluntary or involuntary, of the affairs of the corporation?
Article IV is again clear and definite that the preferred stockholders, in such events, are entitled to be paid or preferred to the extent of $50 per share. The question arises because of the difference as to the rights of the preferred stockholders to cumulative dividends. It appears to me that the provisions discussed above also apply to the rights of the preferred stockholders on recapitalization, reorganization, dissolution or winding up of corporate affairs. In the event that any dividend is to be paid to the common stockholders in excess of the net profits (in excess of $700,000) the preferred stockholders are immediately entitled to cumulative dividends. On the other hand, if dividends are only declared on the common stock from net profits (in excess of $700,000), no cumulative rights accrue to the preferred stock. I therefore find that there presently having been no dividends at all declared on either class of stock, the preferred stockholders presently are entitled to $50 per share, and $50 only, on recapitalization, reorganization, dissolution or winding up of corporate affairs.

III.
The court is next called upon to determine the rights of the preferred stockholders on the redemption of stock.
Again the charter is clear and concise. The preferred stockholders are entitled to $50 per share, and no more, on *355 redemption. But again it is repeated that it is my understanding that no dividends at all have been paid on either class of stock. I therefore find that, if presently redeemed, the stock of the preferred holders should be paid at the rate of $50 per share and no more.

IV.
I make no finding as to the rights of the respective classes of stock in the event that at some future time there would be an attempt to redeem or recapitalize, reorganize, dissolve, or wind up corporate affairs and then declare dividends on the common stock in excess of net profits. Such a finding would necessarily have to await the event.
The above are all of the matters submitted to the court. It is apparent that I have found the contractual arrangement between the parties is clearly set forth in the certificate of incorporation. The language is definite, precise and specific, and is not in general terms. Hence there is no adequate room for the construction thereof.
Under the circumstances there is no need to determine if the dividend credit rule is applicable.