LEEDS AND LIPPINCOTT COMPANY, A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. ETHEL R. NEVIUS, ADAM S. BORST, RANDAL HOLDEN, MIRIAM E. MELLIN AND IDA BOFFEY BACON, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS, AND HELEN LIPPINCOTT PARRISH AND THE REMAINING PREFERRED AND COMMON STOCKHOLDERS OF LEEDS AND LIPPINCOTT COMPANY AS A CLASS, DEFENDANTS-RESPONDENTS.

Argued May 19, 1959—Decided June 26, 1959.

*Mr. Alfred C. Clapp* argued the cause for the defendants-appellants.

*Mr. David M. Perskie* argued the cause for the plaintiff-respondent and the defendant-respondent Helen Lippincott Parrish (*Messrs. Perskie & Perskie,* attorneys for defendant-respondent Helen Lippincott Parrish).

*Mr. James N. Butler* argued the cause for the plaintiff-respondent and cross-appellant (*Messrs. Moore, Butler & McGee,* attorneys).

The opinion of the court was delivered by

JACOBS, J. On March 27, 1957 the plaintiff corporation instituted its class action seeking a determination of the relative rights of its preferred and common stockholders under its amended certificate of incorporation. On September 15, 1958 the Chancery Division entered a declaratory judgment from which preferred stockholders appealed to the Appellate Division. See *Leeds and Lippincott Co. v. Nevius,* 51 *N. J. Super.* 343 (*Ch. Div.* 1958). The plaintiff corporation cross-appealed from the Chancery Division's allowance of counsel fees and we thereafter certified the entire matter on our own motion. See *R. R.* 1:10–1(*a*).

The plaintiff's amended certificate of incorporation first provides that the preferred stockholders shall receive, when and as declared, a yearly dividend at the rate of $2.50, provided that no dividend shall be paid on the preferred stock until the net earnings for the year in which the dividend is to be paid exceed $700,000, and then only to the extent of the excess. It then sets forth the following provisions

upon which the Chancery Division grounded its declaration that the plaintiff may, in any year, declare and pay dividends on the common stock from net earnings in that year exceeding $700,000, provided there has first been paid from such net earnings a dividend of $2.50 per share on the preferred stock:

"The dividends on the preferred stock shall be noncumulative; provided, however, that no dividends shall be paid for any year on common stock in excess of the net profits for that year remaining after payment of Two Dollars and Fifty cents ($2.50) per share for such year on the preferred stock, until dividends earned, but unpaid for any prior year or years on the preferred stock, shall have been paid, but in no other respects shall dividends on preferred stock be cumulative.

No dividends shall be paid on common stock in any year, or for any year, until the full dividend of Two Dollars and Fifty Cents ($2.50) per share for such year has been paid on the preferred stock, and for prior years as set forth in the preceding paragraph. When all dividends as aforesaid have been declared and shall have become payable on the preferred stock, the Board of Directors may declare dividends on the common stock, out of Net Earnings in excess of Seven Hundred Thousand ($700,000.00) Dollars, payable then or thereafter, with limitations as aforesaid."

■ The appellants contend that under the principles expressed in *Sanders v. Cuba Railroad Co.,* 21 *N. J.* 78 (1956), the plaintiff may not pay a dividend on common stock from current net earnings until after the preferred stock is paid not only its current dividend of $2.50 but also its accumulated dividend credit for past years during which there were earnings from which dividends could have been declared but were passed by in the exercise of the discretion of the corporation. We adhere fully to *Sanders* but point out that New Jersey's dividend credit rule, which was there unequivocally reaffirmed, is admittedly subject to contrary directions or provisions which appear clearly in the certificate of incorporation. See 21 *N. J.* at *pages* 83, 86; *R. S.* 14:8–2; *Ballantine, Corporations* 516, 517 (1946). The quoted paragraphs in the plaintiff's certificate clearly import to us, as they did to the Chancery Division, the existence of authority

in the plaintiff to pay from current net earnings exceeding $700,000, a dividend of $2.50 to preferred stockholders and then a dividend to common stockholders from the excess current net earnings. Thus the first sentence explicitly sets forth that dividends on the preferred stock shall be non-cumulative, that no dividends shall be paid for any year on common stock in excess of the net profits for that year remaining after payment of the preferred stock's $2.50 dividend until dividends earned but unpaid for any prior years on the preferred stock shall have been paid, and that in no other respects shall dividends on preferred stock be cumulative. The purpose and effect of this language, insofar as it is pertinent here, appear to us to be entirely evident; after preferred receives its current dividend of $2.50 from current net profits, no dividend to common may exceed the available remaining current net profits unless and until the accumulated dividend credit of preferred for past years has first been paid; or to word it affirmatively, common may, after preferred has been paid its current dividend of $2.50, receive a dividend from the available remaining current net profits but may not receive a dividend from surplus until preferred's dividend credit has been satisfied.

The appellants urge that the second quoted paragraph throws serious doubt on the foregoing construction, but we do not so read it. The first sentence in the second paragraph sets forth that no dividends shall be paid on common stock in any year, or for any year, until the full dividend of $2.50 for such year has been paid on the preferred stock and for prior years as set forth in the preceding paragraph. While it might well have been worded differently, its pertinent purpose appears plainly enough; it is intended to provide an affirmative restriction against the payment of a dividend to common until the $2.50 on preferred has been paid and "as set forth in the preceding paragraph" until the dividend credit has been paid where the payment to common is to come from surplus as distinguished from current net earnings. The second sentence in the second paragraph sets

forth that when all dividends as aforesaid have been declared and shall have become payable on the preferred stock, dividends may be declared on the common stock out of net earnings in excess of $700,000, payable then or thereafter with limitations as aforesaid. Here again the pertinent purpose appears plainly enough; it is intended to provide an affirmative authorization for the declaration of a dividend to common after all dividends on the preferred stock "as aforesaid" have become payable, namely, after the current dividend of $2.50 has become payable and, where common's dividend is being paid from surplus rather than from current net earnings, after preferred's dividend credit has likewise become payable.

It is our understanding from the oral argument that the plaintiff corporation is now contemplating a declaration of dividends only from its current net earnings, and to the extent that paragraph 1 of the Chancery Division's judgment declares that it may pay dividends on common stock from current net earnings exceeding $700,000, provided there has first been paid a dividend of $2.50 on the preferred stock from such net earnings, it is affirmed; for present purposes it need go no further. Paragraphs 2 and 3 of the Chancery Division's judgment proceed to deal with the rights of preferred stockholders upon redemption, recapitalization, reorganization, winding up and dissolution. However, although the complaint does set forth that "within the foreseeable future" the plaintiff will be in a position to pay dividends on the preferred and common stock, it contains no suggestion whatever that the plaintiff is contemplating any redemption of the preferred stock or any recapitalization, reorganization, winding up or dissolution. Indeed, at the oral argument counsel for the plaintiff expressly acknowledged that there would be no such action in the foreseeable future and although, subsequent to the oral argument, counsel for the appellants addressed a letter expressing the view that the issue relating to redemption, recapitalization, reorganization, winding up or dissolution is actually of present concern, a

concurrent letter from the plaintiff's counsel stated that he could not "honestly say that there are any imminent plans afoot." Notwithstanding the apparent absence of any actual controversy within the meaning of the Declaratory Judgments Act (*N. J. S. 2A:16–50 et seq.; New Jersey Turnpike Authority v. Parsons*, 3 *N. J.* 235, 240 (1949)), the Chancery Division determined, as requested in the complaint, that upon redemption, recapitalization, reorganization, dissolution or winding up, the preferred stockholders are entitled to the sum of "$50 per share, and no more." See *Leeds and Lippincott Co. v. Nevius, supra,* 51 *N. J. Super.* at *page* 354. It grounded its determination upon clauses of the certificate which state that preferred stock may be redeemed by paying to the holders thereof the sum of $50 per share, that in the event of recapitalization, reorganization, dissolution or winding up the holders of preferred stock shall be entitled to be paid or preferred to the extent of $50 per share before any amount shall be paid to the holders of common stock, and that after the payment or preference of the preferred stock to the extent of $50 per share the remaining assets of the corporation shall be paid to the holders of the common stock. Nowhere in the clauses is there any express statement as to what shall happen to the preferred stockholders' dividend credits, and we are not at all disposed towards the view that they may be ignored and silently wiped out by redemption, recapitalization, reorganization, dissolution or winding up. *Cf. De Capriles,* "*Business Organization,*" 34 *N. Y. U. L. Rev.* 337, 357 (1959). However, we need not pursue the matter, for the issue may never materialize and in any event there is no present occasion for passing on it; under the circumstances, the Chancery Division should have declined the declaration. See *Sanders v. Cuba Railroad Co., supra,* 21 *N. J.* at *page* 88; *The Proprietary Ass'n v. Bd. of Pharmacy of N. J.,* 16 *N. J.* 62, 71 (1954); *Fidelity Union Trust Co. v. Price,* 18 *N. J. Super.* 578, 599 (*Ch. Div.* 1952), modified, 11 *N. J.* 90, 35 *A. L. R. 2d* 980 (1952).

The plaintiff attacks the provision in the final paragraph 4 of the Chancery Division's judgment which allowed counsel fees to the attorneys for the defendants to be paid from the "undistributed net profits of the plaintiff corporation." It does not question the reasonableness of the allowances but urges that no allowances at all were permissible since there was no fund in court within the meaning of *R. R.* 4:55–7(*b*). It should be borne in mind that the defendants were brought into court by the plaintiff in a class action which designated them as representatives of the preferred and common stockholders. They were subjected by the plaintiff's proceeding to the necessity of engaging counsel whose efforts have now partially redounded not only to their benefit but to the benefit of all members of their respective classes. While no fund was actually turned over to the court, a fund consisting of the corporate assets from which the contemplated dividends to preferred and common stockholders would be paid was, in legal contemplation, brought within the control of the court. See *Cintas v. American Car & Foundry Co.,* 133 *N. J. Eq.* 301 (*Ch.* 1943), affirmed 135 *N. J. Eq.* 305 (*E. & A.* 1944); *Katz v. Farber,* 4 *N. J.* 333, 342 (1950); *Milberg v. Seaboard Trust Co.,* 7 *N. J.* 236, 245 (1951); *In re Koretzky,* 8 *N. J.* 506, 531 (1951); *State v. Otis Elevator Co.,* 12 *N. J.* 1, 10 (1953). Indeed, the plaintiff's complaint seeking a determination as to the relative rights of the preferred and common stockholders may be viewed here as not differing significantly from a complaint in interpleader or a complaint seeking instructions where there are conflicting claims to a trust fund. See *Farley v. Manning,* 4 *N. J.* 571, 576 (1950); *Blut v. Katz,* 36 *N. J. Super.* 185, 189 (*App. Div.* 1955).

In the *Cintas* case, which has been repeatedly cited with approval by this court, a preferred stockholder succeeded in his action to restrain the corporation from paying a proposed dividend to common stockholders from moneys in which the preferred stockholders had prior rights. In holding that counsel for the plaintiff was entitled to a fee

chargeable against the dividends due to the preferred stockholders, the Court of Chancery relied on the traditional equitable rule which permitted the payment of counsel fees out of a fund in court to a litigant who had created or protected the fund for the benefit of the class which he represented (*Janovsky v. American Motorists Ins. Co.*, 11 *N. J.* 1, 7 (1952)); and in response to the contention that the fund itself must be in the hands of the court the vice-chancellor had this to say:

"It is not necessary that the fund be actually and physically in the possession of the court, or in the hands of the clerk of the court, or a receiver, or a trustee. It is sufficient if, as a result of the litigation, the fund is brought under the control of the court. An illustration of this is a suit to construe a will or a trust agreement. In such suits it is common practice to award counsel fees out of the decedent's estate or the trust fund, neither of which is in court, but is the subject matter of the litigation and for that reason under the control of the court." See 133 *N. J. Eq.* at *page* 304.

During the oral argument it was suggested that the allowance to counsel for the appellants should be charged against the preferred stockholders' dividend credits and counsel for the appellants expressed agreement with that course. To that end the provision in the Chancery Division's judgment allowing counsel fees is altered, but in all other respects it is sustained.

Modified.

*For modification*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.