SUNSET BEACH AMUSEMENT CORPORATION, A CORPORA-
TION OF THE STATE OF NEW JERSEY, AND OLYMPIA
AMUSEMENT CORPORATION, A CORPORATION OF THE
STATE OF NEW JERSEY, PLAINTIFFS-RESPONDENTS,
v. MARVIN L. BELK, JOSEPH VARBALOW AND JOSEPH
VARBALOW REALTY COMPANY, A CORPORATION OF
THE STATE OF NEW JERSEY, DEFENDANTS-APPEL-
LANTS, AND WEST JERSEY TITLE AND GUARANTY
COMPANY, A CORPORATION OF THE STATE OF NEW
JERSEY, DEFENDANT-RESPONDENT.

Argued June 7, 1960—Decided June 28, 1960.

Mr. *Louis B. Le Duc* argued the cause for appellants.

Mr. *W. Louis Bossle* argued the cause for plaintiffs-respondents (Mr. *Blaine E. Capehart,* attorney; Mr. *W. Louis Bossle,* of counsel).

Mr. *Sidney P. McCord, Jr.,* argued the cause for defendant-respondent (Messrs. *Starr, Summerill & Davis,* attorneys; Mr. *Sidney P. McCord, Jr.,* of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J.   On a prior appeal we ordered final judgment in favor of plaintiffs for the specific performance of a contract for the sale of their property. *Sunset Beach Amusement Corp. v. Belk,* 31 *N. J.* 445 (1960).  Defendants now appeal from the judgment entered upon the remand with respect to two matters not involved upon the first review:  (1) interest on the purchase price and (2) counsel fees.  We certified the appeal on our motion.

I.

The judgment before us departs somewhat from the treatment of interest in the original judgment, the trial court believing its revision accords with our findings on the earlier appeal.  We agree that it does.

█ Under the contract dated June 30, 1958, the buyer was given immediate possession.  The contract contemplated a final closing 30 days later.  The closing in fact occurred on August 15, the date from which the trial court ordered interest to be paid on the full purchase price.

Defendants say interest should run only from November 10, the date upon which certain "paper" streets were vacated.  We noted in the earlier opinion that upon the happening of that event plaintiffs were in a position fully to perform the contract.  We so observed only to indicate that thereafter there was no impediment to judicial relief (31 *N. J.,* at *p.* 448).  Whether interest should be awarded from that date or an earlier one is another matter to be determined equitably upon all the pertinent facts. *East Ridgelawn Cemetery v. Winne,* 11 *N. J.* 459, 471 (1953).

█ Interest on the purchase price ordinarily is the *quid pro quo* for possession and enjoyment by the purchaser.  The parties bargained for possession without interest for 30 days, and the sellers make no point with respect to the further brief period to August 15.  On that day, the purchaser Belk transferred possession to his corporate nominee, and it there-

after derived the fruits thereof. Although it is true the streets were not vacated until November 10, the fact is that the purchaser failed to procure a survey prior to the final settlement of August 15 and thus it was not until a later date that the impediment was discovered. (31 *N. J.,* at *p.* 448). Realistically the paper streets presented no problem, and had the difficulty been revealed by timely action of the purchaser, the problem would doubtless have been resolved much earlier. Indeed, if any delay had been expected, the subject of interest would probably have received the parties' attention on August 15 and some suitable arrangement made to the end that $250,000 held by the title company, of which $225,000 was in the form of cashier's checks, would have been productively committed. It was the failure of the buyer to obtain a survey, coupled with the confusion he later created by an unwarranted demand for a reduction in the purchase price that accounted for the delay and loss. In these circumstances, equity required that the sellers be compensated from the date of final settlement.

The buyer complains that the receivership which commenced on February 2, 1959 (31 *N. J.,* at *p.* 449) resulted in an unprofitable experience thereafter. But "if there be a hardship, it is of defendants' making." (31 *N. J.,* at *p.* 457). We find nothing in that circumstance warranting a denial of just compensation from August 15.

## II.

With respect to counsel fees, some facts should be repeated. The sum of $25,000 had been escrowed with the title company upon the execution of the contract of sale. Subsequently, the balance of the purchase price was escrowed with the title company in the form of two cashier's checks totalling $225,000 so drawn and endorsed that they had to be held in that form. When defendant Varbalow demanded a return of the deposit and checks, the title company moved to interplead the moneys. Its application was granted as to the initial deposit of $25,000 but the company

was directed to continue to hold the cashier's checks. The court at that stage allowed counsel for the title company a fee of $250 for services in filing the complaint. That allowance is not challenged.

On the thesis that the net sum of $24,750 on deposit with the clerk of the court constituted a "fund in court" within *R. R.* 4:55–7(*b*), the trial court allowed to counsel for plaintiffs the sum of $12,500 and to counsel for the title company the further sum of $1,000. Counsel for defendants, although resisting allowances, asked for one to himself without prejudice to his opposition, and he was awarded $2,500. We think the allowances were unauthorized and must be vacated.

*R. R.* 4:55–7 provides that no fee for legal services shall be allowed in the taxed costs or otherwise except in the situations set forth in that rule. This rule constituted a policy decision to break with the practice of the former Court of Chancery which authorized counsel fees to the victor in the ordinary adversary proceeding. See *State v. Otis Elevator Co.*, 12 *N. J.* 1, 10 (1953). That practice had never obtained in the courts of law. In actual operation it proved unduly onerous upon litigants and spawned charges of favoritism. Although the sanction of counsel fees against a plaintiff who sues or a defendant who defends in manifest bad faith has much to commend it, yet the problem of confining allowances to precisely that situation in actual practice would be a formidable one. At any rate, the rule of court adopted the policy that except in the situations within its terms each litigant shall bear the expenses of prosecuting and defending his individual interests. *State v. Otis Elevator Co., supra* (12 *N. J.*, at *p.* 10 and at *pp.* 26–27 (dissenting opinion)); *Janovsky v. American Motorists Insurance Co.*, 11 *N. J.* 1, 7 (1952).

*Subsection* (*b*) of *R. R.* 4:55–7 permits an allowance:

"Out of a fund in court. The court in its discretion may make an allowance out of such a fund, but no allowance shall be made as to issues triable of right by a jury."

"Fund in court" is not too happy a term. It is a shorthand expression intended to embrace certain situations in which equitably allowances should be made and can be made consistently with the policy of the rule that each litigant shall bear his own costs. The difficulty with the term is that literally it may connote a fund within the precincts of the court in a physical or geographic sense whereas "in court" refers to the jurisdictional authority of the court to deal with the subject matter. See *Cintas v. American Car & Foundry Co.*, 133 *N. J. Eq.* 301, 304 (*Ch.* 1943), affirmed and modified on other grounds, 135 *N. J. Eq.* 305 (*E. & A.* 1944); *Ferguson v. Rippel*, 21 *N. J. Super.* 59, 62 (*Ch. Div.* 1952), affirmed 23 *N. J. Super.* 132, 142 (*App. Div.* 1952), certification denied 11 *N. J.* 329 (1953). And for that matter, the existence of power in the court to control the subject matter is not itself enough to demonstrate the existence of a "fund in court" within the purpose of the rule. *Haines v. Burlington County Bridge Comm.*, 8 *N. J.* 539, 542 (1952).

We see no present reason to explore the limits of the concept. It is enough to refer to some of the underlying principles to demonstrate why the present case is beyond its scope.

In general, allowances are payable from a "fund" when it would be unfair to saddle the full cost upon the litigant for the reason that the litigant is doing more than merely advancing his own interests. Thus, for example, when there are classes of claimants to the fund and the services redound to the benefit of others as well, it is fair that all contribute to the cost by a charge against the subject matter. *Blut v. Katz*, 36 *N. J. Super.* 185, 189 (*App. Div.* 1955); 6 *Moore's Federal Practice* (1953), § 54.77 [2], at *p.* 1349; *Annotation* 49 *A. L. R.* 1149 (1927), supplemented 107 *A. L. R.* 749 (1937); *Note, 35 Colum. L. Rev.* 740 (1935). Typical is a controversy among stockholders with respect to dividend rights in the surplus of a corporation. *Cintas v. American Car & Foundry Co., supra.*

With respect to a decedent's estate, the same circumstances may obtain, or the litigation may serve to protect the estate or to further its proper administration. See *In re Koretzky,* 8 *N. J.* 506, 531 (1951); *Farr v. First Camden National Bank & Trust Co.,* 6 *N. J. Super.* 223, 225–26 (*App. Div.* 1950); *Ferguson v. Rippel, supra* (23 *N. J. Super.,* at *p.* 142). *R. R.* 4:55–7(*e*) deals expressly with allowances in an action to probate a will or codicil.

Where the litigant creates a fund which will benefit others, again it is just that the fund be charged. Included are actions by a stockholder on behalf of the corporation to recover assets diverted or withheld from it. Essentially in the same category are escheat actions where the State's attorney gathers the fund for the protection of unknown claimants or the State. See *State v. Otis Elevator Co., supra* (12 *N. J.,* at *pp.* 5, 9–12).

A stakeholder who interpleads the fund is allowed the expenses of the interpleader itself because as a fiduciary he is entitled to be reimbursed for the costs of handling the *res.* Somewhat akin in principle is the allowance to a defendant in an escheat action insofar as the services involved represent the efforts of a stakeholder to protect or relieve itself of the fund rather than as an adversary seeking to establish that the fund is its own. See *State v. Otis Elevator Co., supra* (12 *N. J.,* at *pp.* 9–12, 18–22).

Here plaintiffs sought to compel the buyer to perform the contract of sale. Plaintiffs sued solely to advance their own interests. Defendants defended to the same end. If the purchase price had not been deposited with the clerk of the court, nothing could distinguish the case from the ordinary adversary quarrel. See *State v. Otis Elevator Co., supra* (12 *N. J.,* at *p.* 27 (dissenting opinion)). Respondents do not suggest otherwise. Rather they seize upon the fortuitous circumstance that a part of the purchase price, which could well have remained throughout with the escrowee, happened to have been deposited with the clerk of the court. A fund was "in court" only in a *physical* sense. Absent

are any of the equitable circumstances constituting the vitals of a "fund in court" within the reason for the rule.

*Katz v. Farber*, 4 *N. J.* 333 (1950), does not run counter to these views. There the purchase price was deposited with the clerk because the sellers, husband and wife, disputed their respective interests in the sum. The court nowhere intimated that the deposit became a "fund in court" as between the vendor and purchaser. It was held to be such only between the contending sellers, and even there the court sustained a refusal to make allowances to the contenders, doubtless because the claimants to the fund were acting solely to further their individual interests.

Hence the deposit here was not a "fund in court" and the allowances therefrom were without legal support.

We should add a word with respect to the title company. It received an allowance to indemnify it for the cost of making the deposit, and for the reasons already stated the allowance was correct and is not challenged. But the allowance to it of $1,000 here involved was to compensate it for a different role, to wit, as a party interested in defending a charge that it converted the moneys by not returning them to Varbalow. We fail to see any basis for the charge or realistically any pecuniary hazard, but nonetheless it was acting solely for itself with respect to a wrong allegedly committed by it. Like any other adversary it must bear its own costs. See *Janovsky v. American Motorists Ins. Co., supra* (11 *N. J.* 1); *Schmerer v. Estate of Marcus Kirschenbaum*, 39 *N. J. Super.* 475, 479 (*App. Div.* 1956).

With respect to the allowance to counsel for defendants, we add the basis was not the determination of a controversy between attorney and client, and hence the allowance must be set aside notwithstanding that it concerns only the owner of the fund and his own attorney. We assume there is no disagreement between them requiring a judicial determination. At any rate, no such issue was before the court. See *Artale v. Columbia Insurance Co.*, 109 *N. J. L.* 463 (*E. & A.* 1932).

We accordingly conclude: (1) the judgment properly awarded interest and in that respect is affirmed; and (2) the allowance of fees to counsel for plaintiffs, the title company and defendants was unauthorized, and hence that portion of the judgment is reversed and set aside. No costs to any party.

*For affirmance in part and reversal in part*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*Opposed*—None.