66 N.J. Super. 430 (1961)
169 A.2d 503
VIVIAN C. SMITH, ET VIR., PLAINTIFFS-APPELLANTS,
v.
JOHN J. SHATTLS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 27, 1961.
Decided March 10, 1961.
*431 Before Judges GOLDMANN, FOLEY and LEONARD.
Mr. David A. Friedman argued the cause for plaintiffs-appellants (Mr. Lewis C. Stanley, attorney).
Mr. John J. Barry argued the cause for defendant-respondent (Messrs. Richman & Berry, attorneys).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiffs appeal from a judgment entered in the Chancery Division. Plaintiffs were the owners of three properties known as 245 Grand Avenue, Hamilton Township, and 1701 Brunswick Avenue and 4 Hope Street, Lawrence Township. They had paid $18,300 for the Brunswick Avenue and Hope Street properties, and $12,000 for the Grand Avenue property. The three parcels were encumbered *432 by two mortgages held by Roma Savings and Loan Association. The balance due as of February 1957 on the mortgage covering the adjoining Brunswick Avenue and Hope Street properties was approximately $7,950; the balance due on the Grand Avenue property, approximately $4,400. A second mortgage on all three properties was held by Peter and Josephine Barber. This mortgage had been in default for some time and there was a balance due thereon of $5,750. The Barbers sold this mortgage to the Benson Investment Co. at a $1,000 discount.
Plaintiffs were unable to meet their obligations under these three mortgages and late in 1956 Roma instituted a foreclosure suit. Plaintiffs then consulted one Jerome Kurtz, not a member of the bar, who introduced them to the defendant. A major part of defendant's business consisted in arranging loans on substandard properties. After discussing the matter with Roma's attorney plaintiffs consented to convey the three properties to defendant, who agreed that he would assume all obligations currently encumbering the properties, including the interest and counsel fees and costs which had been incurred by reason of plaintiffs' prior defaults. It was further agreed that the defendant would lease the three properties to plaintiffs for a term of three years at a monthly rental of $275, and that they would have an option to repurchase them for $18,300. The agreement also called for a repurchase down-payment of $500 and provided that the balance of the repurchase price, $17,800, be paid in monthly installments of $275, out of which installments there would first be paid taxes, insurance and 6% interest on the unpaid balance, the remainder of each payment to be credited in reduction of the principal then due.
The terms of this agreement were set forth in a letter dated February 2, 1957, to which plaintiffs endorsed their consent. Pursuant thereto, plaintiffs conveyed the properties to the defendant, who in turn executed the lease and option referred to. He paid all arrearages and counsel fees *433 on the Roma mortgages and also purchased the Benson mortgage for $3,300.
Within thirty days thereafter plaintiffs defaulted in their obligations under the lease. Later in 1957 plaintiffs retained an attorney, Ernest Glickman, Esq., who undertook negotiations in their behalf which resulted in a supplemental agreement dated November 15, 1957. This provided for the reinstatement of the lease, and an option to plaintiffs to repurchase the properties for $18,300 cash or, alternatively, to assume the various mortgages and pay the difference between the aggregate of these encumbrances and $10,300.
Within a short time plaintiffs were again in arrears. Again Mr. Glickman negotiated with defendant and in March 1958 a third agreement was entered into by the parties as follows: (1) the Grand Avenue property was retained by defendant; (2) credit in the amount of $6,800 was given to plaintiffs on this property, thereby reducing the indebtedness from $18,300 to $11,500; (3) under date of March 11, 1958 the Hope Street and Brunswick Avenue properties were leased to plaintiffs at a rental of $175 monthly with an option to repurchase for $11,500; (4) plaintiffs executed a general release of their rights under the original lease agreement. At that time the obligations owed by plaintiffs on the three properties, including disbursements for insurance and installments, amounted to approximately $17,300. Thereafter defendant contracted to sell the Grand Avenue property for $11,900 under a long-term conditional sales contract.
On September 16, 1958 plaintiffs filed a verified complaint in three counts seeking: (1) that plaintiffs be declared the true owners of the three properties and defendant merely the holder of an equitable mortgage thereon; also that defendant account for moneys received and expended as such mortgagee; (2) that the leases be set aside or reformed, and plaintiffs be declared the true owners; that the release above mentioned be set aside; *434 that defendant be required to account for profits derived from the three properties; and that compensatory and punitive damages be awarded against him for malicious prosecution; (3) that defendant be restrained from prosecuting any action for possession arising from the transactions pending an adjudication of the suit.
Prior to the final hearing the trial court put the properties in the control of the defendant and relieved plaintiffs of making further payments under the purported leases.
At the conclusion of the final hearing the court, explicitly absolving defendant of fraud, held that the original conveyance and lease-back of the three properties to defendant in legal effect constituted an equitable mortgage; that under the subsequent agreement of March 1958 plaintiffs were the true owners of the Hope Street and Brunswick Avenue properties, and defendant held an equitable mortgage of $11,500 thereon; that the general release given on March 11, 1958 in connection with the latter agreement cut off plaintiffs' equity of redemption in the Grand Avenue property, and also extinguished such rights as had previously accrued to them as equitable mortgagors of the Hope Street and Brunswick Avenue properties; and that the malicious prosecution charge was not supported by the proofs. In consequence of the determination of the validity of the release of March 11, 1958 the trial court approved defendant's account of moneys received and disbursed thereafter, found that defendant owed plaintiffs $1,090.55 and, after crediting this amount on the equitable mortgage attaching to the Hope Street and Brunswick Avenue properties, concluded that $10,409.45 was due defendant on that mortgage. The final judgment entered on January 19, 1960 afforded plaintiffs the opportunity to make payment of this amount on or prior to February 3, 1960, and directed the sale of the property by foreclosure to satisfy the indebtedness if such payment was not made, although such relief was not sought by defendant in his pleadings or otherwise. Evidently upon the theory that the payment of the indebtedness or *435 the sale of the property would produce a fund in court, the trial judge also allowed to plaintiffs' attorney a counsel fee and reimbursement for the costs of suit.
Plaintiffs' appeal, as presented in their brief, challenges the dismissal of the malicious prosecution claim and the holding that the release was sufficient in law to extinguish their equity of redemption in the Grand Avenue property deriving from their status as equitable mortgagors of all three properties under the original agreement. And upon the premise that they retained such right to redeem, it is urged that defendant should have been required to account for all receipts and disbursements from the time he first acquired his mortgage interest rather than from March 11, 1958, the release date. Plaintiffs also appeal from the court's direction that the properties be sold if not redeemed within the time specified.
Defendant does not cross-appeal from the allowance of a counsel fee and disbursements, but argues that there was no fund in court and that under R.R. 4:55-7(b) the absence of same is a jurisdictional bar to the allowance and, hence, an issue which may be raised at any stage of the proceedings.
We pause briefly to consider the attack made by plaintiffs on the disposition of the malicious prosecution claim. The briefing of this point is preceded by a melange of charges of iniquitous conduct on defendant's part under the title: "It is offensive to the public policy of New Jersey to lend money using the device of a deed and lease-back with repurchase option to obtain usurious gain or absolute title." The discussion is inapposite to the issues on this appeal; many of the points sought to be raised by it were not raised below and so they will not now be considered. See Reynolds Offset Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959).
As to the claim of malicious prosecution itself, counsel who argued the matter orally refrained from reference to it until, at the conclusion of his argument, he was queried *436 by the court concerning it. He then frankly stated that he did not feel that the point was supportable, but that since he had neither tried the case nor prepared the brief, but had been retained in substitution of the attorney who had, he was reluctant to expressly abandon the point. In the circumstances counsel's diffidence is understandable. In anticipation that the matter would be presented, we fully considered it in our advance study of the case. We find it to be without merit and to require no discussion beyond an observation that, as the trial court found, the prosecution consisted only of defendant's legitimate resort to our courts in an effort to enforce against plaintiffs the obligations owing to him.
It was conceded by plaintiffs' counsel on the oral argument that the core of plaintiffs' case involves the question of whether the release of March 11, 1958 was sufficient as a matter of law to extinguish plaintiffs' equity of redemption in the Grand Avenue property, and to release defendant from any claims plaintiffs might assert against him arising from the original agreement. In short, was or was not the legal effect of the release to wipe the slate clean and to start anew, with plaintiffs' rights (including the right to an accounting) to be limited to those arising from the new equitable mortgage of $11,500 on the Hope Street and Brunswick Avenue properties?
At the outset it should be repeated that the trial court found that defendant was not guilty of fraud in any of the transactions between the parties. Our review of the record leads to a like conclusion. It should also be borne in mind that the parties dealt at arm's length and that plaintiffs were represented by competent counsel throughout.
A mortgagor may not deprive himself of a right to redeem even by an express agreement for that purpose if such agreement is a part of, or made contemporaneously with, the conveyance. Dorman v. Fisher, 31 N.J. 13, 15 (1959); Griffen v. Cooper, 73 N.J. Eq. 465, 466 (Ch. 1907). In this respect a mortgage forms a marked exception to *437 the principle that, in general, all persons able to contract are permitted to determine and control their legal relations by agreements which are not illegal or opposed to good morals or to public policy. 4 Pomeroy's Equity Jurisprudence (5th ed. 1941), § 1193, pp. 568-569. But it is recognized that a mortgagor may at any time after the execution of the mortgage, by a separate and distinct transaction, sell or release his equity of redemption to the mortgagee. Ibid., at pp. 571-572. See also Russell v. Southard, 12 How. 139, 53 U.S. 139, 13 L.Ed. 927, 933 (1851). Such a transaction, however, is one which a court of equity will examine strictly in order to be satisfied that it is a fair and independent proceeding, entirely unconnected with the original contract of mortgage. 4 Pomeroy's Equity Jurisprudence, supra, at pp. 572-573.
Plaintiffs argue that the release was ineffective because it was not entirely unconnected with the original contract. We cannot agree. The agreement and release of March 1958, taken together, constituted a separate and independent transaction. At the time it was consummated plaintiffs were long in default of their original obligations, and of those created by the supplemental agreement of November 1957. In effect, they were again in the precarious position from which they had sought to dislodge themselves by the first agreement, a position which had been worsened by the accumulation in the interim of interest and unpaid taxes with which they were chargeable. Moreover, the position of defendant had changed, at least to the extent that, viewing the situation realistically, performance of the existing contract by plaintiffs appeared to be hopeless.
Thus, we think that in these changed circumstances the release of the equity of redemption in the Grand Street property must be regarded as a separate transaction which rested upon a new and valid consideration, provided that the entire arrangement was found to be fair. In total effect the situation then was no different from what it would have been had the parties been dealing for the first time, and *438 the plaintiffs, in consideration of the conveyance to defendant of the Hope Street and Brunswick Avenue properties on a lease-back arrangement, and having an equity in the Grand Street property, conveyed it in fee simple to defendant. Surely, in such circumstances, if plaintiffs subsequently defaulted and sought to avail themselves of redemption upon the theory that the Hope Street and Brunswick Avenue conveyances, while in the form of deeds, amounted to no more than equitable mortgages, they could not be heard to claim that they still had equity in the Grand Avenue property which they had conveyed in fee simple.
Moreover, the words of the release considered in the context of the agreement make it clear that the parties were contracting anew. Plaintiffs released defendant "of and from all * * * actions, cause and causes of action, suits, debts" etc.
"and more particularly by reason of a certain lease entered into between the parties hereto, dated February 11, 1957, whereby the said John J. Shattls leased to us, the said James Smith and Vivian Charlotte Smith, his wife, premises No. 245 Grand Avenue, Trenton, N.J., No. 1701 Brunswick Avenue and No. 4 Hope Street, Lawrence Township, New Jersey; and by reason of any other agreements between the parties pertaining to the aforesaid premises."
There remains to be considered whether the trial court was justified in concluding that the arrangements of March 1958, of which the release was a part, were fair and equitable. Upon the facts of the case, as hereinabove outlined, and a consideration of the entire record, we are satisfied that the trial court was amply justified in concluding that they were. As we have already noted, plaintiffs were represented by counsel and there was testimony that it was he, who, in a "last-ditch" effort to salvage what he could from an arrangement which plaintiffs probably should never have undertaken, suggested that defendant keep the Grand Avenue property and reduce the repurchase price for the other two to $11,500. In the absence of fraud, *439 or of a confidential relationship, it is difficult to attribute to defendant wrongdoing for assenting to the proposal, even though all concerned may have had serious doubts that plaintiffs would be able to perform, and even though all knew that if default occurred the plaintiffs would be left without equity in the Grand Avenue property. After all defendant was not required to keep plaintiffs' hopes alive. Had he chosen to do so he might have foreclosed all three mortgages without further ado.
Therefore the trial court properly limited the accounting by the defendant to the period commencing with the agreement of March 1958 and held that the receipts and disbursements in connection with the Grand Avenue property thereafter would be disregarded.
The function of evaluating the details of defendant's accounting was peculiarly within the domain of the trial court, involving as it did, in some measure at least, a consideration of the credibility of the witnesses, and the inferences to be drawn from all of the evidence. Upon a review of the proofs we find no reason for disturbing the court's findings on this aspect of the case or the court's ultimate conclusion of the amount of the indebtedness due.
We do, however, disagree with the action of the trial court in fixing the terms of redemption, and in ordering a sale in the event of non-compliance therewith. This adjudication was in effect a judgment of foreclosure. Foreclosure was not within the issues raised by the pleadings and the pretrial order, and the order therefor will be vacated.
We are satisfied also that the trial court should not have allowed a counsel fee and costs. There was no fund in court under R.R. 4:55-7(b), nor would there have been even if the redemption or sale had been properly ordered. See Sunset Beach Amusement Corp. v. Belk, 33 N.J. 162, 167-168 (1960).
The cause is remanded with directions that the judgment be modified in conformity with this opinion and without prejudice to the right of the defendant to foreclose the *440 mortgage on the Hope Street and Brunswick Avenue properties in case any default exists at this time.
Modified. No costs.