826 A.2d 615

SHEILA HENDERSON, PLAINTIFF–RESPONDENT, v. CAMDEN
COUNTY MUNICIPAL UTILITY AUTHORITY,
DEFENDANT–APPELLANT.

Argued March 4, 2003—Decided July 8, 2003.

556

*Warren W. Faulk* argued the cause for appellant (*Brown & Connery,* attorneys).

*James Greenberg* argued the cause for respondent (*Wolf, Block, Schorr and Solis–Cohen,* attorneys; *Mr. Greenberg* and *Gregory A. Lomax,* of counsel and on the briefs).

*Daniel P. Reynolds,* Senior Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Peter C. Harvey,* Acting Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel).

*Melville D. Miller, Jr.,* President, submitted a brief on behalf of amicus curiae Legal Services of New Jersey (*Mr. Miller,* attorney; *Mr. Miller, Dawn K. Miller* and *Bertram P. Goltz, Jr.,* on the brief).

The opinion of the Court was delivered by

ZAZZALI, J.

This appeal requires us to determine whether Section 41 of the Municipal and County Utilities Authority Law, *N.J.S.A.* 40:14B–1 to –70 (MCUAL), authorizes municipal and county utilities authorities to charge compound interest on delinquent customer accounts. We conclude that *N.J.S.A.* 40:14B–41 authorizes only simple interest. Because this appeal presents a matter of first impression and retroactive application could lead to substantial inequitable results, we also conclude that our decision applies prospectively.

I

Pursuant to the MCUAL, defendant Camden County Municipal Utilities Authority (CCMUA) provides Camden County residents with water and sewer services. Plaintiff Sheila Henderson has been a customer of CCMUA for over eleven years. Henderson ceased making regular payments to CCMUA in 1993 and received notice seven years later that her property was subject to a municipal lien and tax sale. At that time, Henderson owed CCMUA $3,485.63, including $1,749.02 in interest charges. After Henderson inquired about the "accuracy of the bill and the excessive interest charges," CCMUA informed her that it had compounded interest on her delinquent account. Henderson eventually paid that entire bill, including the compound interest charges, to avert the tax sale of her property.

Henderson then filed a class action complaint, alleging that CCMUA's assessment of compound interest was unlawful because *N.J.S.A.* 40:14B–41 authorized only simple interest. Henderson sought a judgment declaring null and void all previously assessed compound interest charges, enjoining CCMUA from charging any further compound interest on delinquent accounts, and awarding monetary damages, costs, and attorneys' fees.

The trial court construed *N.J.S.A.* 40:14B–41 to allow CCMUA to charge compound interest and entered summary judgment for CCMUA. In an unreported decision, the Appellate Division reversed, concluding that the statute did not authorize compound interest, and remanded for further proceedings. Henderson moved before the trial court for an order granting class certification and CCMUA petitioned this Court for certification. The Appellate Division stayed the class certification proceedings pending the disposition of CCMUA's petition by this Court. We granted certification. 174 *N.J.* 365, 807 *A.2d* 196 (2002).

II

The MCUAL grants municipalities and counties the power to create independent authorities to provide basic utilities services.

*N.J.S.A.* 40:14B–4. Those authorities finance their operations by assessing service charges to property owners and occupants. *N.J.S.A.* 40:14B–21 to –23. Section 41 of the MCUAL states:

> In the event that a service charge of any municipal authority with regard to any parcel of real property shall not be paid as and when due, *interest shall accrue* and be due to the municipal authority *on the unpaid balance* at the rate of 1 1/2% per month until such service charge, and the interest thereon, shall be fully paid to the municipal authority.

[ (Emphasis added).]

CCMUA argues that the term "unpaid balance" includes interest charges that previously have accrued. Accordingly, it asserts that the statute permits it to charge compound interest, or "[i]nterest paid on both the principal and the previously accumulated interest," *Black's Law Dictionary,* 817 (7th ed.1999), at the rate of 1 1/2% per month on the sum of any outstanding service charges and any outstanding unpaid interest. Henderson disagrees, arguing that this Court should read the term "unpaid balance" to include only the sum of any unpaid service charges and not any accrued interest. She asserts that the statute authorizes only simple interest, or "[i]nterest paid on the principal only and not on accumulated interest." *Ibid.*

We begin our analysis by noting that the statute does not define the term "unpaid balance," and is susceptible on its face to the interpretations advanced by both parties. "If conflicting interpretations of a statute are plausible, a reviewing court should not regard that statute's meaning to be self-evident." *In re Passaic County Util. Auth.,* 164 *N.J.* 270, 299, 753 *A.*2d 661 (2000) (citing *National Waste Recycling, Inc. v. Middlesex County Improvement Auth.,* 150 *N.J.* 209, 223, 695 *A.*2d 1381 (1997)). Instead, it should employ extrinsic aids, such as legislative intent or prior precedent, to interpret the language at issue. *Id.* at 300, 753 *A.*2d 661 (citing *Bergen Commercial Bank v. Sisler,* 157 *N.J.* 188, 205, 723 *A.*2d 944 (1999)).

Because compound interest "unduly hastens the accumulation of debt," courts regard it as unfairly "harsh and oppressive." *Abramowitz v. Washington Cemetery Ass'n,* 139 *N.J. Eq.* 293, 296,

51 *A*.2d 461 (Ch.1947). Accordingly, compound interest is disfavored at common law. *See Shadow Lawn Sav. & Loan Ass'n v. Palmarozza*, 190 *N.J.Super.* 314, 317, 463 *A*.2d 384 (App.Div.1983); *Crest Sav. & Loan Ass'n v. Mason*, 243 *N.J.Super.* 646, 648, 581 *A*.2d 120 (Ch.Div.1990); *Abramowitz, supra*, 139 *N.J. Eq.* at 296–97, 51 *A*.2d 461; *Force v. City of Elizabeth*, 28 *N.J. Eq.* 403, 405 (Ch. 1877), *rev'd on other grounds*, 29 *N.J. Eq.* 587 (E. & A. 1878). "No statute is to be construed as altering the common law, farther than its words import." *Velazquez v. Jiminez*, 172 *N.J.* 240, 257, 798 *A*.2d 51 (2002) (quotations and citations omitted). Thus, the Legislature's failure to deviate explicitly from the common-law presumption against compound interest suggests that *N.J.S.A.* 40:14B–41 authorizes only simple interest. *See Hensley v. West Virginia Dep't of Health & Human Res.*, 203 *W.Va.* 456, 508 *S.E.*2d 616, 625 (1998) (interpreting statute to permit only simple interest in absence of explicit legislative authorization of compound interest); *Nation v. W.D.E. Elec., Co.*, 454 *Mich.* 489, 563 *N.W.*2d 233, 236 (1997) (same); *Metropolitan Prop. & Liab. Ins. Co. v. Ralph*, 138 *N.H.* 378, 640 *A*.2d 763, 767–68 (1994) (same); *Powell v. Retirement Bd. of Allegheny County*, 431 *Pa.* 396, 246 *A*.2d 110, 115 (1968) (same).

The statute's legislative history also is instructive. In 1981, the Legislature increased the interest rate authorized by *N.J.S.A.* 40:14B–41 from 1% to 1 1/2% per month. The Assembly Sponsors' Statement referred only to an increase in the interest rate charged on "delinquent user charges" and made no mention of charging interest on unpaid interest. *Sponsors' Statement*, Assembly Bill No. 855 (Feb. 4, 1980); *L.* 1981, *c.* 530. Moreover, the Governor's Statement in respect of the proposed increase noted that the increase in the authorized interest rate was intended to "parallel recent increases permitted on delinquent real property tax payments" undertaken in a 1979 amendment to *N.J.S.A.* 54:4–67. *Governor's Objections and Recommendations*, Assembly Bill No. 855 (Jan. 7, 1982); *L.* 1981, *c.* 530. That amendment increased from 12% to 18% the annual interest rate ceiling on tax delinquencies in excess of $1500. *L.* 1979, *c.* 435, § 1. We note that

simple interest charged pursuant to *N.J.S.A.* 40:14B–41 at a rate of 1 1/2% per month would mirror the 18% annual interest rate ceiling set forth at *N.J.S.A.* 54:4–67. By contrast, compounding interest under *N.J.S.A.* 40:14B–41 could result in an annual interest rate that exceeds the 18% annual rate ceiling. Thus, to the extent that the increase of the interest rate authorized by *N.J.S.A.* 40:14B–41 to 1 1/2% was intended to "parallel" the increase in the annual rate ceiling of *N.J.S.A.* 54:4–67 to 18%, it suggests that the "interest" contemplated by *N.J.S.A.* 40:14B–41 is simple and not compound interest.

Finally, we note that when the Legislature has authorized compound interest, it has done so explicitly. *See, e.g., N.J.S.A.* 17B:25–9 (providing for payment of indebtedness to insurer "all with interest at a specified rate and which may be compounded as specified"); *N.J.S.A.* 40:3–21 (providing for payment into special sinking fund "until the deficiency with interest compounded annually at three and one-half per cent from January first, one thousand nine hundred and seventeen, is accumulated"); *N.J.S.A.* 54:4–3.69 (providing for application of roll-back taxes to property "with interest compounded at 8% annually").

For the forgoing reasons, we conclude that the term "interest" as it appears in *N.J.S.A.* 40:14B–41 refers to simple interest only. As a corollary, we also conclude that the term "unpaid balance" contemplates unpaid service charges only and not accrued unpaid interest. We therefore hold that *N.J.S.A.* 40:14B–41 permits utilities authorities to charge only simple interest and that it was improper for CCMUA to assess interest on a principal composed in part of unpaid interest charges.

## III

We now decide whether to apply this decision prospectively. "Generally, judicial decisions are applied retroactively to all civil matters that have not reached final judgment." *Frazier v. New Jersey Mfrs. Ins. Co.*, 142 *N.J.* 590, 606, 667 *A.*2d 670 (1995). However, "prospective application is appropriate when a decision

establishes a new principle of law by overruling past precedent or by deciding an issue of first impression." *Montells v. Haynes*, 133 *N.J.* 282, 295, 627 *A.*2d 654 (1993). In deciding whether to apply a decision prospectively, we also consider whether retroactive application "could produce substantial inequitable results." *Ibid.*

We first address whether our holding establishes a new rule of law by overruling past precedent or by deciding an issue of first impression. Generally, an issue of statutory construction that implicates an established practice and that courts have not yet addressed presents an issue of first impression. *See Reuter v. Fort Lee Borough Council*, 167 *N.J.* 38, 42, 768 *A.*2d 769 (2001); *SASCO 1997 NI, LLC v. Zudkewich*, 166 *N.J.* 579, 594, 767 *A.*2d 469 (2001). Prior to this appeal no reported court decision had addressed whether *N.J.S.A.* 40:14B–41 permitted utilities authorities to charge compound interest on delinquent customer accounts. Moreover, CCMUA indicated at oral argument before this Court that it has compounded interest for nearly thirteen years without objection from its customers. Finally, we also learned at oral argument that other utilities authorities in this state have charged compound interest. Because our decision implicates the statutory validity of a long-standing practice, we conclude that it establishes a new rule.

We next inquire whether retroactive application of our decision could lead to substantial inequitable results. A refund of previously collected compound interest would engage CCMUA in an exhaustive review of quarterly bills that span a period of almost nine years. CCMUA manages approximately 150,000 customer accounts per year and estimates that it would have to review approximately four million invoices to issue refunds. Moreover, retroactive application of our decision likely would cause other utilities authorities throughout the state to incur considerable expense and administrative hardship in the process of computing and issuing potential refunds. In view of those difficulties, retroactive application of this decision could produce substantial inequitable results.

In view of the foregoing considerations, we apply our decision prospectively and decline to require refunds of compound interest charges that CCMUA customers already have paid. Going forward, CCMUA may not continue to charge compound interest on delinquent customer accounts. In addition, to the extent that any unpaid customer debt consists of compound interest charged pursuant to *N.J.S.A.* 40:14B–41, that debt may not be collected by CCMUA or any party that has obtained from CCMUA the right to collect it. Further, if unpaid debt comprised of compound interest forms the basis of municipal liens on customers' property, then CCMUA must ensure that those charges are "backed out" from such liens.

We recognize that our decision has some limited retroactive effect because it requires CCMUA to cancel debt that already has accrued. We note, however, that in contrast to the administrative burden of issuing a refund, prohibiting the collection of outstanding compound interest will not result in substantial inequity. Instead, it simply requires that CCMUA review its current accounts to identify and cancel pending compound interest charges. Accordingly, CCMUA no longer may charge or collect compound interest on delinquent customer accounts. We remand this matter to the trial court to ensure that relief is granted in accordance with our decision.

Finally, we conclude that Henderson is entitled to the full benefit of the new rule because of her efforts in litigating this appeal. *Kibble v. Weeks Dredging & Constr. Co.*, 161 *N.J.* 178, 196, 735 *A.*2d 1142 (1999). CCMUA therefore must refund to Henderson the full amount of any compound interest that she has paid.

### IV

We now determine whether Henderson is entitled to attorneys' fees. Because "sound judicial administration is best advanced if litigants bear their own counsel fees," *Department of Envtl. Prot. v. Ventron Corp.*, 94 *N.J.* 473, 504, 468 *A.*2d 150

(1983), the prevailing party in litigation generally is not entitled to an award of attorneys' fees. *In re Estate of Lash*, 169 *N.J.* 20, 30, 776 *A.*2d 765 (2001); *North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 *N.J.* 561, 569, 730 *A.*2d 843 (1999). One exception to that rule is that attorneys' fees may be awarded from a "fund in court." *R.* 4:42–9(a)(2). *See State v. Otis Elevator Co.*, 12 *N.J.* 1, 10, 95 *A.*2d 715 (1953); *Janovsky v. American Motorists Ins. Co.*, 11 *N.J.* 1, 7, 93 *A.*2d 1 (1952).

"Fund in court" is a term of art that embraces equitable principles. *Sarner v. Sarner*, 38 *N.J.* 463, 468, 185 *A.*2d 851 (1962); *Sunset Beach Amusement Co. v. Belk*, 33 *N.J.* 162, 168, 162 *A.*2d 834 (1960). As Chief Justice Weintraub explained in *Sunset Beach, supra:*

> 'Fund in court' is ... a shorthand expression intended to embrace certain situations in which equitably allowances should be made and can be made consistently with the policy of the rule that each litigant shall bear his own costs. The difficulty with the term is that literally it may connote a fund within the precincts of the court in a physical or geographic sense whereas 'in court' refers to the jurisdictional authority of the court to deal with the subject matter.
>
> . . . .
>
> In general, allowances are payable from a 'fund' when it would be unfair to saddle the full cost of upon the litigant for the reason that the litigant is doing more than merely advancing his own interests. Thus, for example, when there are classes of claimants to the fund and the services redound to the benefit of others as well, it is fair that all contribute to the cost by a charge against the subject matter.
>
> [33 *N.J.* at 168, 162 *A.*2d 834 (citations omitted).]

Consistent with those observations, a court need not have jurisdiction over the disbursement of an actual "fund" to justify an award of attorneys' fees. *See Silverstein v. Shadow Lawn Sav. & Loan Ass'n*, 51 *N.J.* 30, 45, 237 *A.*2d 474 (1968). The fund in court exception generally applies when a party litigates a matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation. *Silverstein, supra*, 51 *N.J.* at 45, 237 *A.*2d 474; *Sarner, supra*, 38 *N.J.* at 468–69, 185 *A.*2d 851; *Leeds & Lippincott Co. v. Nevius*, 30 *N.J.* 281, 288, 153 *A.*2d 45 (1959). It does not apply when a party litigates a private dispute for its own personal gain. *See Sunset Beach, supra*, 33

*N.J.* at 169–70, 162 *A.*2d 834; *Janovsky, supra,* 11 *N.J.* at 7–8, 93 *A.*2d 1.

In *Silverstein, supra,* the plaintiffs brought a class action against their mortgagee for breach of contract that arose out of a disagreement over the proper method for computing interest. 51 *N.J.* at 32, 237 *A.*2d 474. The trial court granted the defendant's motion for summary judgment and dismissed the complaint without certifying the class of plaintiffs. *Id.* at 32–33, 237 *A.*2d 474. On direct certification, we reversed the trial court's decision and ruled in favor of the plaintiffs. *Id.* at 43–44, 237 *A.*2d 474. Although we declined to remand the case for class action proceedings, we nonetheless held that the plaintiffs were entitled to attorneys' fees under the fund in court doctrine as though the case were proceeding as a class action. In reaching that result, we stated:

> Concededly, plaintiffs sought to bring this suit as a class action because otherwise such mortgagors would benefit from the result without having to contribute to the fair cost of the suit, including especially a reasonable counsel fee to plaintiffs' attorneys in light of the work involved and the extent of the benefit to all, which they would be required to do if the suit were proceeded with as a class action. *See R.R.* 4:55–7(b) ["Fund in Court," now *R.* 4:42–9(a)(2) ]; *Sarner v. Sarner,* 38 *N.J.* 463, 185 *A.*2d 851 (1962). But the conclusion here reached is naturally *stare decisis* as to defendant's other mortgagors whom we have point out as similarly affected.
>
> . . . .
>
> We think therefore that it would be an unnecessary prolongation of this litigation for us to direct that the trial court proceed with it now as a class action, but that, in fairness to plaintiffs and their attorneys, it ought to be treated as such for the purpose of awarding a counsel fee to plaintiffs' attorneys. We consider this to be with the spirit of *R.R.* 4:55–7(b); *Cf. Red Devil Tools v. Tip Top Brush Co.,* 50 *N.J.* 563, 236 *A.*2d 861 (1967).
>
> [*Id.* at 45, 237 A.2d 474.]

■ We note that circumstances similar to those present in *Silverstein* exist in this appeal. As a consequence of this Court's ruling that *N.J.S.A.* 40:14B–41 does not authorize compound interest, CCMUA may no longer charge or collect compound interest from its customers. Our decision confers an economic benefit on a class of persons that did not contribute to the cost of the litigation. Accordingly, we award Henderson attorneys' fees pursuant to the

fund in court doctrine, although we are not directing class certification in view of our conclusion in respect of prospectivity. Consistent with *Silverstein,* on remand, the trial court must also determine reasonable attorneys' fees pursuant to *Rule* 4:42–9(a)(2). In applying for attorneys' fees, Henderson's attorneys must comply with the requirements set forth by *Rule* 4:42–9(b)–(c).

V

In sum, because *N.J.S.A.* 40:14B–41 does not expressly authorize compound interest, utilities authorities may charge and collect only simple interest on delinquent customer accounts. CCMUA is solely responsible for reasonable attorneys' fees. The judgment of the Appellate Division is affirmed. We remand to the trial court for an award of those fees and to ensure that relief is granted in accordance with our decision.

*For affirmance and remandment*—Chief Justice PORITZ and Justices COLEMAN, LONG, VERNIERO, LaVECCHIA, ZAZZALI and ALBIN—7.

*Opposed*—None.