**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1331-23

IN THE MATTER OF VINCENT
W. URBANK and IDA M. GRAF
URBANK, REVOCABLE LIVING
TRUST DATED 07/18/1991.

_____

Submitted February 4, 2025 – Decided February 19, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 186576.

Vincent A. Urbank, appellant pro se.

Taff, Davies & Kalwinsky, LLC, attorneys for respondent Trustee of Living Trust 1 (Joel A. Davies, on the brief).

Haines & Yost, attorneys for respondent Trustee of Living Trust 2 (Jerome C. Landers, on the brief).

PER CURIAM

Appellant Vincent A. Urbank appeals from the December 7, 2023 Probate Part order denying reconsideration of the October 5, 2023 judgment, which approved Jerome Landers, Esq.'s interim formal accounting as a successor

trustee for the Vincent W. Urbank and Ida M. Graf Revocable Living Trust (RVT) and awarded $2,805. Following our review of the record, parties' arguments, and applicable legal principles, we affirm.

I.

This matter returns to us after our remand to the probate court for further proceedings to ensure that all court-appointed RVT trustees and administrators "fully account[ed] for estate and [RVT] assets formerly in their hands."[1] In re Vincent W. Urbank and Ida M. Graf Revocable Living Trust, No. A-2022-19 (App. Div. July 7, 2022) (slip op. at 1-16). Specifically, we remanded for the court "to ensure that each of the three successive trustees the court ha[d] appointed in this case either file[d] an accounting, produce[d] a previously filed accounting either approved by the court or the beneficiaries or otherwise

_____

[1] Although the parties did not raise the issue, we recognize Urbank filed this appeal before the court concluded its review of successor trustee Jerome A. Davies, Esq.'s formal accounting pursuant to our remand instructions. We note that "[g]enerally, an order is considered final if it disposes of all issues as to all parties." Silviera-Francisco v. Bd. of Educ. of Elizabeth, 224 N.J. 126, 136 (2016). While an appeal as of right may be taken to the Appellate Division from a "final judgment[]," R. 2:2-3(a)(1), we nevertheless sua sponte grant leave to appeal nunc pro tunc. See R. 2:4-4(b)(2); Mims v. City of Gloucester, 479 N.J. Super. 1, 3 n.1 (App. Div. 2024) ("[T]he sole discretion to permit an interlocutory appeal has been lodged with the appellate courts." (alteration in original) (quoting Grow Co. v. Chokshi, 403 N.J. Super. 443, 458 (App. Div. 2008))).

explain[ed] on the record why it was impossible to comply with the order(s) that they account." In re Urbank, slip op. at 15. We directed that "[t]he court should not hesitate to order the disgorgement of commissions and fees the court ha[d] previously awarded, if necessary, to secure the trustees' compliance." Id. at 15-16. The court was to "ensure that all records, information and documents relating to [RVT] and estate assets [we]re promptly turned over to the current trustee." Id. at 16.

We incorporate the salient facts and procedural history set forth in our prior opinion. In re Urbank, slip op. at 1-16. As we discerned:

> Vincent A. Urbank was apparently the only child of Vincent W. Urbank and Ida M. Graf, the grantors of [the RVT] established in 1991. Following their deaths, Vincent J. Urbank, grandson of the grantors, sued his father on behalf of himself and his three siblings, alleging their father, as successor trustee, had failed to make required distributions to them. Their father, our appellant, apparently contended his father created a testamentary trust in 2006, superseding the [RVT] and placing all then-existing trust assets and all other estate assets into a new trust to be administered to meet his needs, with his children taking the remainder at his death.
>
> [Id. at 3.]

A-1331-23

After Urbank's children filed the lawsuit seeking trust distributions, the court appointed Peter Van Dyke, Esq. as the first interim trustee/temporary administrator of the Estate of Vincent W. Urbank. Thereafter, in 2014:

> Appellant and his children settled the trust litigation . . . via a comprehensive seventeen-page agreement in our appendix. That agreement was "based on the understanding that the existing trust assets held in trust by the interim trustee [were] on the order of $1,640,000." The parties agreed $500,000 of trust assets would be allocated to appellant's children, leaving, after taxes and attorney's fees, approximately $875,000 in real property and liquid assets "allocated to the defendant Vincent A. Urbank in trust to provide for his reasonable living expenses commensurate with his present standard of living (including without limitation the cost of housing, clothing, food, entertainment, and reasonable vacation travel)." Urbank represent[ed] he ha[d] made no requests for distributions, preferring to allow trust assets to accumulate and grow.
>
> [Id. at 3-4 (first alteration in original).]

"The agreement also provided that any trustee would provide an annual 'comprehensive accounting to the contingent beneficiaries' with a copy to Vincent A. Urbank." Id. at 4. As we previously explained:

> The October 27, 2014 order approving the settlement provided the parties were to nominate within forty-five days a corporate trustee, or if no corporate trustee could be found willing to accept appointment, another trustee acceptable to all parties, and that "[a]ll assets currently held in the control of the interim trustee

4

A-1331-23

and or the estate of Vincent W. Urbank, shall be transferred to the new trustee," who "shall retitle all assets to be held in the Vincent W. Urbank Testamentary Trust." Finally, . . . the order provided that "Peter Van Dyke shall be paid the sum to be determined with his <u>final accounting</u> for his services as the interim trustee of the [RVT]" and "[a]ny new trustee shall comply with the terms of the Settlement Agreement as to the requirement to account to the beneficiaries and the contingent beneficiaries of the Vincent W. Urbank Testamentary Trust."

. . . [A] July 25, 2016 order prepared by Van Dyke appointing [Landers], as successor trustee of the [RVT] [required Landers] to be bonded in the sum of $762,000 . . . . The order does not approve or reference a final accounting despite providing "in lieu of executing release and refunding bonds, the bonding company accept the within order and discharge the present trustee bond."

The current trustee, Joel A. Davies, Esq., state[d] he was appointed successor trustee for the [RVT] by order of October 17, 2016, which order [wa]s not in the appendix. There [wa]s, however, a "corrective interim order" of January 13, 2017, which explain[ed] "the most recent order of the court having preserved the right for the prior court-appointed, substitute trustee, [Landers], to be discharged . . . upon his filing of an appropriate order to show cause and <u>final accounting</u> . . . and the court having also advised" Landers "might be relieved of his role . . . upon the identification of another attorney . . . versed in probate matters, and who deemed himself/herself ready, willing, able, and capable to assume the role, and with independent counsel, [Davies], having indicated that he would accept said appointment," the court appointed Davies as successor trustee replacing Landers and

5

ordered Landers to file "a certified accounting" within forty-five days.

Although the settlement agreement and the order approving it require[d] any trustee to file an annual accounting, Davies made no move to do so until Urbank wrote to him in July 2019, about a letter Urbank received from Fidelity Investments that two accounts titled in the name of his parents' revocable trust totaling $65,009.13 were about to escheat to the State and information received from his son that several others were already in the hands of the unclaimed property administrator. Urbank complained in that letter that he had "not received any accounting, done by your firm as trustee, or any other firm/trustee since the settlement agreement dated October 27, 2014."

[Id. at 3-7 (first and third alterations in original) (footnote omitted).]

Davies thereafter acknowledged to Urbank that funds had escheated to the State and that the settlement agreement required the trustees to file annual accountings. After preparing two accountings for the period between October 17, 2016 and October 26, 2019, Davies filed a verified complaint seeking court approval of his accountings. Because no prior trustees provided accountings, he maintained he was inhibited from providing the required accountings. Davies advised the court he had inquired of Landers in September and November 2018 as to the status of Landers' required certified accounting, but Landers never provided an accounting.

Urbank filed exceptions to Davies' accountings, including an objection that Davies' proposed formal accountings were inaccurate because Davies had not obtained the prior trustees' accountings. Urbank posited Davies was required to timely ascertain the necessary prior accountings. Davies' response "reiterated that Landers never provided the final accounting he was ordered to provide, forcing Davies 'to cobble together the information that [he] had to the best of [his] ability for the time period.'" Id. at 9-10 (alterations in original). Landers also apparently provided the court with a certification, which explained that he had "never provided an accounting because the trust assets 'did not ever really come into his hands.'" Id. at 11.

Unpersuaded by Urbank's exceptions, the court ordered the approval of Davies' accountings and denied Urbank's exceptions, which Urbank appealed, and we reversed. We concluded the court erred in accepting "Landers' certification without hearing from Landers on the record as to his failure to comply with an unequivocal court order directing him to file an accounting" and approving Davies' two accountings without the required prior records or accountings. Id. at 14.

A-1331-23

On August 24, 2022, in compliance with our remand order, the court[2] issued an order to show cause requiring each court appointed trustee to submit a formal accounting. On August 15, 2023, the court held a hearing to address Urbank's exceptions to Van Dyke's filed formal accounting. After the Surrogate's Office conducted an accounting audit and recommended amendments, the court ultimately approved Van Dyke's formal accounting and granted him a commission.

On February 23, 2023, the court ordered that: Landers serve an amended accounting; interested parties may thereafter file exceptions; and the parties were to appear for a hearing. Landers submitted an interim accounting after Van Dyke completed his amended formal accounting and after receiving subpoenaed records from financial institutions. Landers requested counsel fees, the cost of the bond, and the associated costs he incurred from producing the compelled accounting.

After a hearing on October 2, the court issued an order accompanied by an oral statement of reasons approving Landers' interim accounting, denying Landers' request for counsel fees, and awarding $2,805 for the bond payment

---

[2] We note this matter has had a long and tortured history. The court handling the remand was new to the matter and commendably ensured compliance with our instruction that the court-appointed trustees provide required accountings.

A-1331-23

and associated costs. The court reasoned that the Surrogate's Office had conducted an audit of Landers' accounting "to test for accuracy and transparency" and found "no derelictions." Further, it found Landers had demonstrated the bond payment was from his law firm's trust account by submitting "a receipt [showing] that the bond amount was a bond payment" and the secured "bond surety." The court observed that Urbank was "also a trustee of th[e] [RVT]" and "failed to account for the assets of th[e] [RVT], which brought on the initial litigation." Urbank had conceded he never completed an accounting. The court noted that Urbank acted as the first trustee and recognized that his failure to provide an accounting had repercussions for each successive trustees' required accounting thereafter. It stated Urbank was "the only trustee in response to the [c]ourt's order to show cause that ha[d not] filed an account[ing] with the [c]ourt to date." After noting the limited time Landers served as a trustee, the court found he was never relieved "of his obligations as a fiduciary or under the prior court orders" to provide an accounting. At argument, Landers addressed his requested $2,805 in costs, which included the $2,265 bond payment to Conner, Strong & Buckelew and associated costs for "mailing and things of that nature that have been paid for by the firm." The court noted the "costs outlined in [Landers'] application" were "directly related"

to the bond. It was satisfied that Landers "should be refunded . . . out of the [RVT]" for the bond "along with the other expenses that [Landers] outlined that his firm paid on his behalf related to this matter."

Urbank moved for reconsideration of the court's order awarding $2,805 in costs. He argued the court should disallow the award because the RVT would be paying for "two . . . bonds for the same [year]," as there were two overlapping bonds once the court appointed Davies as the successor trustee, and no refund was obtained. Urbank further argued the court should disallow the award because Landers' incurred "$504[] in fees" was due to Landers' failure to timely complete a final accounting and keep "adequate bookkeeping records." He also argued the associated fees for the "subpoenaing [of] records from the bank and mailings" should have been denied because there would be no costs if Landers had done a timely accounting.

On December 7, 2023, at oral argument, the court noted it had previously awarded "Landers $2,805 to be paid out of the [RVT] in connection with costs incurred for a bond while serving as trustee, and additional costs that were incurred during the pendency of the present matter" involving the bond. It denied reconsideration, finding Landers served as a successor trustee for about eighty-four days, "from July 25, 2016 to October 17, 2016," and Urbank

produced no evidence showing the RVT paid for two bonds or an opportunity to receive a prorated bond refund. The court acknowledged the possibility of overlapping bonds but noted it had not discharged Landers' bond obligation. Further, it found, pursuant to N.J.S.A. 3B:31-47(b), that awarding Landers' firm's bond payment of $2,265 was appropriate. Regarding the associated costs, the court noted the award was discretionary as "a fund in court." After highlighting it had denied Landers' application for counsel fees, the court explained it had concluded the "nominal fees" were "related to this action" and appropriately awarded. It found no evidence warranting reconsideration of the award.

On appeal, Urbank contends the court's award of $2,805 warrants reversal because: it failed "to address the simultaneous payment of two fiduciary bonds"; there was a "discrepancy between the trustees ordered bond"; and it erred in awarding the bond, delivery fees, and bank fees. Davies, the third appointed successor trustee, argues the court's orders should be affirmed.

## II.

We are guided by our narrow role of review. It is well-established that in addressing a matter returning to the Appellate Division following a remand, our scope of review is limited. See Deverman v. Stevens Builders, Inc., 35 N.J.

Super. 300, 302 (App. Div. 1955). "It is not our function . . . to allow a collateral review of the first decision of this Division but only to adjudge whether it has been complied with." Ibid.; see also Tomaino v. Burman, 364 N.J. Super. 224, 232 (App. Div. 2003).

Pursuant to N.J.S.A. 3B:2-2, the Superior Court has "full authority over the accounts of fiduciaries." A trustee has a fiduciary relationship with a trust. See Innes v. Marzano-Lesnevich, 224 N.J. 584, 596 (2014) ("[A] fiduciary relationship exists between a trustee and the trust." (quoting In re Niles Tr., 176 N.J. 282, 297 (2003))). A trustee's duties "depend primarily upon the terms of the trust." MacKenzie v. Reg'l Principals Ass'n, 377 N.J. Super. 252, 264 (Ch. Div. 2004) (citing Branch v. White, 99 N.J. Super. 295, 306 (App. Div. 1968)). "N.J.S.A. 3B:31-67(a) requires '[a] trustee [to] keep the qualified beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests.'" In re Gloria T. Mann Revocable Tr., 468 N.J. Super. 160, 179 (App. Div. 2021) (alterations in original) (quoting N.J.S.A. 3B:31-67(a)). An "executor or trustee plainly owe a fiduciary duty to the beneficiaries of the estate or the trust." In re Est. of Folcher, 224 N.J. 496, 511 (2016). "In administering a trust, the trustee may incur only costs that are appropriate and reasonable in relation to the trust property, the

purposes of the trust, and the skills of the trustee." N.J.S.A. 3B:31-58. A trustee bears similar duties to a trust's remaindermen, if any, and must not use the trust property to benefit only "the life beneficiaries." In re Will of Maxwell, 306 N.J. Super. 563, 585-86 (App. Div. 1997) (collecting authorities).

"A trustee shall give bond to secure performance of the trustee's duties as prescribed by N.J.S.[A.] 3B:15-1 [to -33] if the court finds that a bond is needed to protect the interests of the beneficiaries or is required by the terms of the trust and the court has not dispensed with that requirement." N.J.S.A. 3B:31-47(a). Generally, "the cost of the bond is an expense of the trust." N.J.S.A. 3B:31-47(b). If a trustee is in breach of trust, the court may "compel the trustee to redress a breach of trust by paying money, restoring property, or other means." N.J.S.A. 3B:31-71(3). Further, the court may "reduce or deny compensation to the trustee." N.J.S.A. 3B:31-71(8).

III.

In accordance with our remand instructions, the court required Landers, as a successor trustee, to complete an accounting for the RVT, and it thereafter held a hearing to address Urbank's exceptions before approving the accounting. Urbank's challenge to its judgment is limited to Landers' award of $2,805 for the bond payment and directly-related costs.

We first address Urbank's contentions that the court erred in awarding Landers the cost of the 2016 bond payment because the trust was charged for overlapping bonds for the same period and discrepancies exist. As the court noted, Urbank failed to produce "specific evidence . . . that the [RVT] ha[d] to pay for two bonds" during the same one-year period. The court reasoned that Landers had moved before a prior probate court on August 8, 2016 to be relieved as the RVT's trustee and had served as a successor trustee for about eighty-four days. Cf. N.J.S.A. 3B:31-50(c) ("Any liability of a resigning trustee or of any sureties on the trustee's bond for acts or omissions of the trustee is not discharged or affected by the trustee's resignation."). While it is unclear whether Davies obtained an overlapping bond, no evidence in the record evinces that Landers was permitted to discharge his bond and that a refund was possible.

We concur with the court that Urbank demonstrated no discrepancy in Landers' bond payment. While Urbank did not include Landers' accounting exhibits in his appendix on appeal, the record reflects the court found Landers supplied sufficient evidence of his firm's $2,265 bond payment to Conner, Strong & Buckelew from its trust account. No evidence demonstrated that the bond was previously paid from the RVT, as Landers had mistakenly attested to

14

previously. For these reasons, we discern the court did not err in awarding Landers the cost of the bond.

We next consider Urbank's arguments that the court erroneously awarded costs to Landers for $365 in delivery service fees and $175 for bank subpoena fees. Urbank argues Landers would not have incurred these additional costs if he had timely completed the required interim accounting. He specifically posits that Landers would not have needed to subpoena bank records and incur mailing fees if he had timely performed the accounting. While the court did not excuse the successor trustees from producing the required accountings under N.J.S.A. 3B:31-47(a), the court found that Urbank's failure to provide an accounting as the RVT's original trustee adversely impacted the successor trustees' ability to perform accountings. The court accepted Landers' representation that he had moved to be relieved as RVT's trustee in 2016 because Urbank had refused to cooperate and communicate regarding the trust. The court was also satisfied that Landers established the costs he requested were sufficiently associated with the bond payment. The court appropriately distinguished that Landers was not entitled to attorney's fees for acting in a "pro se capacity" when "respon[ding] to [its] order to show cause." Specifically, it found that while Landers was not entitled to attorney's fees, he "directly" incurred the additional costs as a result

of obtaining and accounting for the bond. Regardless of when Landers completed the accounting, certified bank records to support the disputed accounting were necessary here. Therefore, Landers' award of the costs for the delivery service fees was also warranted.

We review an award of attorney's fees and costs for an abuse of discretion. Hansen v. Rite Aid Corp., 253 N.J. 191, 211-12 (2023); McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). An attorney's application for costs requires "an itemization of disbursements for which reimbursement is sought." R. 4:42-9(b). "Such an award 'will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Hansen, 253 N.J. at 211-12 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

"Under the so-called 'American Rule,' adhered to by the federal courts and by the courts of this state, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" Id. at 212 (quoting Rendine, 141 N.J. at 322). "One exception to that rule is that attorneys' fees may be awarded from a 'fund in court.'" Henderson v. Camden Cnty. Mun. Util. Auth., 176 N.J. 554, 564 (2003) (quoting R. 4:42-9(a)(2)). "'Fund in court' is an equitable term of art." Porreca v. City of Millville, 419 N.J. Super. 212, 225 (App. Div. 2011). The exception "generally applies when a party litigates a

matter that produces a tangible economic benefit for a class of persons that did not contribute to the cost of the litigation." Gannett Satellite Info. Network, LLC v. Township of Neptune, 254 N.J. 242, 263 (2023) (quoting Henderson, 176 N.J. at 564). This includes cases where the litigation did more than merely advance the interests of the litigant seeking the award. See Henderson, 176 N.J. at 564. Accordingly, the "court need not have jurisdiction over the disbursement of an actual 'fund' to justify an award of attorney's fees" under this exception. Ibid.

We conclude the record sufficiently supports the court's award to Landers of $540 in costs associated with his $2,265 bond payment and reported accounting. We find no abuse of discretion warranting our intervention. A court abuses its discretion "when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Mims, 479 N.J. Super. at 5 (quoting Kornbleuth v. Westover, 241 N.J. 289, 302 (2020)). An award should not be disturbed if supported, even though we might have reached a different result. See Hansen, 253 N.J at 211-12.

To the extent that we have not addressed defendant's remaining contentions, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1331-23